**WALSH et al. v. TADLOCK et al.**

No. 9090.

Circuit Court of Appeals, Ninth Circuit.

May 24, 1939.

Rehearing Denied June 23, 1939.

Lloyd S. Nix and Lilian M. Fish, both of Los Angeles, Cal., for appellants.

Lindley & Higgins and J. F. DuPaul, all of San Diego, Cal., for appellee Security Trust & Savings Bank.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The earlier history of this litigation is related in Security Trust & Savings Bank of San Diego v. Walsh, 9 Cir., 91 F.2d 481. The present appeal involves the division of the proceeds of an insurance policy.

Appellee Tadlock was the owner of the fishing vessel Yellowtail. Appellee Security Trust & Savings Bank of San Diego was the holder of a mortgage on the vessel as security for the payment of an instalment note in excess of $9,000, made October 22, 1934. The mortgage required the owner

to keep the boat insured at all times in a company to be selected by the bank, for an amount at least equal to the sum remaining unpaid on the indebtedness. In October, 1935 the owner procured a policy of insurance on the boat in the sum of $7,000, payable to Tadlock and the bank as their respective interests might appear. The term of the policy was for one year.[1]

Between the 23rd of December, 1935, and the end of January, 1936, appellants Garbutt-Walsh made certain repairs on the boat and furnished materials and equipment for the same at the instance and request of the owner, of the reasonable value of $4,358.06. The trial court found that while this work was in progress the appellants.instructed a firm of insurance brokers to procure for them insurance coverage on the vessel in the amount of $1,800. The brokers obtained temporary coverage in that amount. Thereafter, as the proof shows, they contacted the company which had written the outstanding policy in favor of the owner and the bank and requested a separate policy in the amount of $1,800, naming appellants as payees. After some investigation concerning values, the company agreed to write insurance on the boat in the additional amount of $1,000 only, but insisted on combining this with the original coverage in a single policy. Thereupon the brokers, with the consent of the mortgagee bank, procured the issuance of a new policy in the amount of $8,000, the $7,000 policy previously written being canceled. The substitute policy provided coverage for one year from February 5, 1936. Loss was made payable to Tadlock, the bank and appellants, "as their respective interests may appear."[2]

On February 22, 1936 the Yellowtail burned and sank at sea, becoming a total loss. Subsequently the insurer interpleaded the named beneficiaries and deposited the proceeds of the policy, less an unpaid premium, in the registry of the court. After a trial on the cross demands of the beneficiaries the court made findings and conclusions to the effect that the appellee bank was entitled to seven-eighths of the net proceeds of the insurance and the appellants to one-eighth. The seniority of the latter's maritime lien on the boat was recognized, but it was determined that by the cancellation of the original policy and the

issuance of the new one it was intended by all parties concerned, including the insurance company, that the insurance protection of the mortgagee bank should continue as before in the amount of $7,000, and that the insurance protection of appellants should be limited to the amount by which the coverage had been increased. The proof is ample that such was the arrangement ultimately made by appellants' brokers, and the decree must be affirmed.

■ With the total destruction of the vessel the liens thereon were of necessity extinguished. 38 C.J. 1247. These liens did not attach to the proceeds of the insurance, nor did appellants' lien on the boat per se entitle them to participate in the division of the insurance money. A. M. Bright Grocery Co. v. Lindsey, D.C., 225 F. 257; Place et al. v. Norwich & N. Y. Transp. Co., 118 U.S. 468, 6 S.Ct. 1150. 30 L.Ed. 134; White v. Gilman, 138 Cal. 375, 71 P. 436. Their right to do that was dependent on the contract of insurance. Alexander v. Security-First National Bank, 7 Cal.2d 718, 62 P.2d 735; Corder v. McDougall, 216 Cal. 773, 16 P.2d 740; Davis v. Phœnix Ins. Co., 111 Cal. 409, 43 P. 1115; Newark Fire Ins. Co. v. Turk, C.C., 6 F.2d 533, 43 A.L.R. 496. The interests of the named payees were not described in the policy, either as to nature or as to amount, nor was the order of payment specified. In the absence of any showing to the contrary the loss-payable clause of the policy may be. construed as requiring a division in proportion to the respective insurable interests of the payees, or as giving a preferred status to the claimant having a superior lien on the boat. However, the circumstances attendant upon the procurement of this policy were such as to disclose an intention to limit appellants' interest in it to a definite sum.

■■ Appellants objected to evidence of the negotiations carried on by the insurance brokers in obtaining coverage, and now complain that the evidence was inadmissible as tending to vary the terms of the policy. But, as among the payees themselves, the policy was not necessarily the whole of the contract. Compare Ætna Ins. Co. v. Boon, 95 U.S. 117, 24 L.Ed. 395; Goss v. Security Ins. Co., 113 Cal.App. 577, 298 P. 860; 32 C.J. 1148. The proof objected to tended

---

[1] The policy appears to have been a renewal of a prior one.

[2] The policy was delivered in California, the parties are citizens of that state, and the loss appears to have been payable there.

to elucidate a clause otherwise left unexplained. Appellants further urge that the brokers, who were their agents, had no authority to make any arrangement limiting their coverage to the extent found. But they are not in position to claim the benefits of the arrangement and at the same time deny the authority of their brokers to make it.

Affirmed.