In re ATCORP I, INC., and ATCORP II, Inc., Debtors.

ATCORP I, INC., and ATCORP II, Inc., Appellants,

v.

NATIONAL MARINE FISHERIES SERVICE, Appellee.

Bankruptcy No. 82–9031.

United States Bankruptcy Appellate Panel for the First Circuit.

Dec. 23, 1982.

P. Benjamin Zuckerman, David C. Hillman, Robert J. Keach, Verrill & Dana, Portland, Me., for appellants.

Richard C. Cohen, U.S. Atty., D. Me., F. Mark Terison, Asst. U.S. Atty., Portland, Me., John L. Pedrick, Jr., Office of General Counsel Nat. Oceanic and Atmospheric Admin., Washington, D.C., Marguerite M. Matera, Office of General Counsel Nat. Oceanic and Atmospheric Admin., Gloucester, Mass., for appellee.

Before LAWLESS, C.J., and GLENNON and LAVIEN, JJ.

## OPINION

LAVIEN, Bankruptcy Judge.

This appeal involves a dispute between the debtor and its secured creditor over the disposition of insurance proceeds. The debtor, ATCORP I, Inc.[1] (ATCORP) appeals the order of the Bankruptcy Court which allowed the secured creditor, National Marine Fisheries Service (NMFS), whose security was the insured property, to recover interest after the date of filing and after the date of the loss of the insured property.

The NMFS is an agency of the United States Department of Commerce authorized to guarantee financing of United States fishing vessels. On November 27, 1979, ATCORP executed and delivered to the NMFS a First Preferred Ship Mortgage on the fishing vessel PIONEER the corporation's principal asset. The mortgage secured the guaranteed debt in the original principal amount of $418,750.

On August 20, 1981, ATCORP filed a voluntary Chapter 11 petition. ATCORP has remained a debtor-in-possession. On August 27, 1981, the NMFS declared the mortgage in default. On October 3, 1981, the NMFS paid the guaranteed lender's agent, the Bank of New York, $436,583.06 and on November 10, 1981, an additional $417.50, in response to that lender's demand for payment on its guarantee.

In November of 1981, the appellant filed a proposed plan of reorganization (plan). The plan contemplated a cure and reinstatement of the First Preferred Ship Mortgage of the NMFS. The hearing on confirmation was held on December 16, 1981 and the NMFS objected to confirmation of the plan. The Bankruptcy Court took the matter of confirmation under advisement, but the PIONEER sank on December 17, 1981, before a decision was made.

After the sinking, the plan was modified to provide that the secured claim of the NMFS, as allowed by the Court, would be paid in cash in full after confirmation at such time as the insurance recovery on the PIONEER was received and an order for its distribution issued by the Court.

---

1. Although the appeal was brought in the name of ATCORP I and ATCORP. II, the issues only involve ATCORP I.

The issues raised on appeal concern the extent to which insurance proceeds may be considered substituted collateral and the extent to which interest should be allowed. The dispute is concerned only with the question of interest.[2]

ATCORP filed its proof of loss with the insurance company promptly by the end of December, 1981. The insurance company did not tender payment until April 15, 1982.[3] The insurance claim was $800,000. The total insurance payment was $777,-957.75, the difference from $800,000 having being deducted by the insurer for certain unpaid premiums.[4] The record shows that the NMFS was a co-payee on the check and that the check was endorsed on May 19, 1981.

The NMFS seeks $473,750.91 from the estate which amount includes $405,840.62 in principal, $42,268.75 of pre-filing and post-filing interest up to the date of the loss, and $27,434.64 of interest after the date of the loss of the PIONEER.

On June 29, 1982, the bankruptcy judge determined that the allowed claim of NMFS should include all interest until the date of payment.[5] On July 7, 1982, NMFS was paid $405,840.62 out of the insurance proceeds since there was no dispute about the principal amount. The appellant now appeals the Bankruptcy Court's determination that the NMFS is entitled to interest until the date of the payment.

The initial question to be answered is what rights did the NMFS have after the vessel was lost. The insurance policy contained both hull insurance and breach of warranty insurance. The *breach of warranty* coverage is a separate contract between the insurer and the mortgagee. The breach of warranty coverage clause was contained in a document attached to the policy entitled "Fishing Vessel Mortgage Coverage". The breach of warranty coverage protects the interests of the NMFS from policy defenses that the insurance company may have against the mortgagor. 5A Appleman, *Insurance Law & Practice* § 3401 at 282 (1970). The *hull* insurance insures against the specific risks stated in the policy. The rights of the mortgagee and mortgagor are protected, according to the language of the hull insurance contract, "as their interests may appear". This clause is referred to as an open loss payable clause. The legal effect of this clause is that the mortgagee is an appointee only to receive funds payable in the event of loss; and the clause does not create a new contract with the payee. *Id.*

The parties[6] stipulated on June 28, 1982 that:

> The vessel sunk as a result of an insured peril under the *hull* policy. Loss payess (sic) under the hull policy were ATCORP I, NMFS and Maine National Bank "as their interests may appear." The endorsement entitled "Fishing Vessel Mortgagee Coverage" was at all times part of the policy and in full force and affect. (Emphasis added.)

As an initial issue of fact, the appellant argues that there was a limitation on the recovery of the insurance proceeds by the NMFS. That limitation is contained in the document entitled "Fishing Vessel Mortgagee Coverage" which states in relevant part:

> The amount of coverage under this endorsement shall be the unpaid principal amount of the mortgage; however, in no event shall this Company's limit of liability exceed $418,750.

---

2. The interest rate was 12⅝% per annum up to the declaration of default on August 27, 1981, and thereafter was at the default rate of 12% per annum.

3. The insurance contract provided that the insurance company was to pay the claim within 30 days. Whether the insurance company has incurred any liability, to the appellant or to the NMFS, is not an issue in this appeal.

4. The appellant stated that it will dispute this deduction in another proceeding.

5. The Court denied only the interest claim for the period from May 3rd to May 19th, which was the period that the NMFS refused to endorse the check even though the Court had ordered the endorsement.

6. The Maine National Bank was a party to this appeal but its claim was voluntarily dismissed.

That document, as stated above, sets out the breach of warranty coverage described above.

▉ Whether the limitation clause was triggered in the circumstances of this case, as argued by the appellant, would be a finding of fact by the Bankruptcy Court which, ordinarily, cannot be reversed unless clearly erroneous. Bankruptcy Rule 752; Rule 16, First Circuit Rules Governing Appeals from Bankruptcy Judges to District Courts, Appellate Panels and Court of Appeals; *In re Garland Corp.*, 6 B.R. 456, 460–61 (Bkrtcy. 1st Cir.1980). However, when a determination is made entirely on documentary evidence, the reviewing court "is in as good a position to determine the question as is the lower court." *In re Holi-Penn, Inc.*, 535 F.2d 841 (3rd Cir.1976). The parties stipulated that the vessel sank as a result of an insured peril under the hull policy. The limitation in the breach of warranty clause would therefore not apply.[7]

▉ The Bankruptcy Court held that the Bankruptcy Code required that the claim of the NMFS be unimpaired, i.e., that the NMFS' legal, equitable and contractual rights must remain unaltered. The Bankruptcy Court concluded that the claim would be impaired under 11 U.S.C. § 1124(1) unless interest were allowed to the date of payment. The determination of the rights of the NMFS was a matter of law. While this Court must accept the findings of fact made by the bankruptcy judge unless clearly erroneous, no such limitation applies to the conclusion of law. *In re Howell*, 638 F.2d 81, 82 (9th Cir.1980).

▉ The amount of the allowed secured claim of the NMFS depended upon its rights under the insurance contract and not upon the mortgage agreement. *Eagle Star & British Dominions v. Tadlock*, 22 F.Supp. 545 (S.D.Cal.1938), *aff'd.*, 104 F.2d 131 (9th Cir.1939) (*Tadlock*). The term "as their interests may appear" in the insurance contract, commonly referred to as an open mortgage clause, means that the loss will extend only to the balance owing to the mortgage holder at the time the loss occurs. *Tadlock, supra* at 547; 5A Appleman, *Insurance Law & Practice* § 3401 at 284 (1970).

When several persons are designated as beneficiaries, and the clause "as their interest may appear" is worded in the subjunctive mood, it postulates their respective interest, not at the time the policy of insurance is issued, but "such interest as by proper proofs is shown to appear *at the time of the loss.*" *Tadlock, supra*, at 547 (citations omitted) (emphasis added). Therefore, the proper amount of the NMFS' claim was the amount it was owed as of the date of the loss.

The NMFS argues that *Tadlock* only applies to determine its rights to a certain portion of the insurance proceeds, and because the appellant recovered an amount in excess of its claim, the NMFS was oversecured and entitled to recover interest under 11 U.S.C. § 506(b). Section 506(b) allows interest only to the extent that the claim is secured by property whose value is greater than the amount of the claim. While § 506(b) would allow an oversecured creditor to recover interest, NMFS was not oversecured as of the date of the loss. With the sinking of the PIONEER, the security under the mortgage was gone. To the extent that the insurance proceeds became the security, we must look to the policy and what it provides for the parties. *Tadlock, supra* at 547.

Under the insurance contract, the amount owed the mortgagee at the time of the loss was the extent of its claim. 5A Appleman, *Insurance Law & Practice*, § 3401 at 285 (1970). The amount of the NMFS claim on the date of the loss was $448,109.37 which includes principal of $405,840.62 plus pre and post-filing interest of $42,268.75. The NMFS' claim was fixed at the instant of the loss. To the extent that the insurance proceeds were security, the amount of $448,109.37 was its limit. All other security was gone. Since the claim and anything equivalent to security was fixed as of the date of the loss, the NMFS had no claim on the insurance for anything arising after the

---

**7.** This is consistent with the conclusion reached by the court below.

date of loss, and by definition could not be oversecured by the insurance. Once the claim of the NMFS was fixed at the date of the loss, no interest after that date could be charged against the policy. Any potential interest claim would be for unmatured interest and under section 502(b)(2) may not be allowed. Even before there was an express provision in the Code, the courts under the 1898 Act disallowed any post-filing interest. The date of filing became the claim date and interest beyond that date was unmatured and as a general rule not allowed on unsecured claims. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1949). To allow interest would be unfair to the creditors who were not involved in the necessary bankruptcy delays. Under this rationale, interest has even been denied on disputed claims. *In re United Merchants & Manufacturers, Inc.,* 5 B.C.D. 337 (Bkrtcy.S.D.N.Y.1979). The NMFS is not entitled to any interest payments after the date of the loss.

The NMFS appears to agree with the interpretation of *Tadlock* we have set out above, i.e., that *Tadlock* limits the NMFS' recovery of principal and interest under the insurance policy to the amount owed on the mortgage as of the date of loss. (NMFS Brief at 17). However, the NMFS asserts another basis for its claim against the insurance proceeds for post-loss interest. The NMFS contends that it possesses an equitable lien on the balance of the proceeds until fully paid. Because of this alleged equitable lien, the NMFS argues it is oversecured [8] and thus entitled, under bankruptcy law, to post-petition interest after the date of loss.

In support of its equitable lien theory, the NMFS cites the rule that

if the mortgagor convenants to keep the mortgaged property insured for the better security of the mortgagee, the latter will have an equitable lien upon the proceeds of insurance carried by the mortgagor, in case of loss, to the extent of his

interest in the property destroyed, even though the policy contains no mortgagee clause and is payable to the mortgagor. *Couch on Insurance 2d* § 29:82 at 366.

That rule is applicable in situations where the insurance proceeds are not payable to the mortgagee, but the mortgagor had promised to insure the property for the mortgagee's benefit, and thus, in equity, the proceeds should be payable to the mortgagee. *Brown v. First National Bank of Dewey,* 617 F.2d 581 (10th Cir.1980). This rule, relied upon by the NMFS to create an equitable lien, is clearly inapplicable here. ATCORP fully performed its obligation under the mortgage agreement to protect the NMFS. The insurance policy did contain a mortgage clause. The NMFS was, in fact, a co-payee on the check representing the insurance recovery. If the insurance coverage did not fully protect the NMFS, neither ATCORP nor its creditors can be blamed since the NMFS provided the endorsement and approved the coverage.

Even a broader view of the equitable argument requires the conclusion that the equities are with the appellant. The mortgage security is gone. ATCORP has repaid all the principal due up to the date of the loss. In argument before the panel, counsel conceded that legally he might not be able to claim more. *In re Parks,* 19 U.C.C.R.S. 334 (Bkrtcy.E.D.Tenn.1976). ATCORP was not to blame for any delay in payment. The insurance policy gave the insurer thirty (30) days, from the date a claim was filed, to make payment. The insurer did not tender payment until April 15, 1982. Since the insurance company was not a party, neither the trial court nor this panel could express an opinion as to any claim against the insurer for the delay in payment; however, there was no evidence that any delay was attributable to the debtor. Further, the NMFS is seeking interest on interest, a recovery that bankruptcy has been reluctant to allow. *See Vanston, supra.*

In sum, the Bankruptcy Court correctly allowed the NMFS to recover interest after

---

8. The amount of its entire claim being substantially less than the amount of the insurance proceeds fund.

the date of filing and to the date of the loss of the insured property, but erred in allowing the NMFS to recover from the insurance proceeds interest after the date of loss and to the date of payment. Once the NMFS has been paid the interest due through the date of loss, its allowable secured claim will have been paid in full and the claim will be unimpaired as that requirement is defined in 11 U.S.C. § 1124(3)(A).

The order, therefore, must be VACATED and the bankruptcy court is directed to enter a new order in accordance with this memorandum.