Brian FARLAND, John Santos, George A. Johnston, Donald Capps, Jr., Steven Farland, George Altman, Peter Farland and Roland Farland

v.

T & T FISHING CORPORATION and Medway Marine Corporation, Samuel Snow, Samuel Snow c/b/a Samuel Snow Insurance, Samuel Snow as Vice President of Medway Marine Corporation, Commodore Insurance Company, Ltd., Kentfield Insurance Company, Ltd., Independent Marine and Cargo Services, Independence Marine Services, Inc. and Richard Browning.

Civ. A. No. 85–0629 P.

United States District Court, D. Rhode Island.

Jan. 23, 1986.

Joseph P. Flannery, Boston, Mass., and Teresa Paiva, Newport, R.I., for plaintiffs.

Thomas A. Tarro, III and David Oliveria, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case involves the rights of the parties to the insurance settlement proceeds relative to a fishing vessel of the defendant, T & T Fishing Corp., which sank in October of 1980. Currently before the Court are the plaintiffs' motion for a preliminary injunction, and defendants' T & T Fishing Corp's, and Community Loan and Development Corp.'s ("Community") motions to dismiss.

*Factual Background*

On October 1, 1985, Plaintiffs, Brian Farland, et al., became judgment creditors of the defendant T & T Fishing Corporation as a result of default judgments entered by

the United States District Court for the District of Massachusetts, in a suit filed in 1983. The claim in that suit was for injuries sustained by the plaintiffs when the sole asset of T & T, a fishing vessel Terry T, sank. The plaintiffs were crew members on the Terry T at the time of the accident.

Community had advanced funds to T & T to purchase the Terry T and had secured the debt with a preferred ship mortgage. Coomunity conditioned the loan on a promise from T & T that it would insure the Terry T and name Community as loss payee under the policy. T & T then sought to obtain a loss policy from defendant Samuel Snow, d/b/a Samuel Snow Insurance Company. Snow, apparently acting as an agent of defendant Medway Marine Corporation ("Medway"), quoted T & T a premium for the coverage, and T & T paid for the protection.

After the vessel sank, T & T and Community discovered that the Terry T had not been insured at the time of the accident. Each filed a lawsuit in Rhode Island Superior Court against defendants Snow, Medway and the other named insurance companies involved in the process of issuing the coverage, alleging claims of negligence and bad faith. These actions were consolidated and on September 13, 1985, the parties reported to the court that they had reached a settlement. The proposed settlement contemplated a payment to Community by the insurers, which payment would be applied by Community to T & T's debt.

Upon learning of this lawsuit and settlement, the plaintiffs brought an action against T & T and the insurers in the Providence County Superior Court in an attempt to secure and enforce their judgments out of the proposed settlement funds offerred by the insurers. The request for a temporary restraining order was denied by the state court, and a hearing was scheduled for November 1, 1985. Plaintiffs then commenced this action and sought a temporary restraining order from this Court delaying the disbursement of the settlement funds until after the parties' priorities to these funds could be established. The plaintiffs asserted that by virtue of their default tort judgments, they had a preferred maritime lien pursuant to 46 U.S.C. § 911, *et seq.* This Court granted the requested temporary restraining order. This Court also granted Community's Motion to Intervene on Nov. 15, 1985.

*Discussion*

◼ The first issue I must address before reaching the merits of the motion for preliminary injunction is the appropriateness of this Court's retaining jurisdiction of this action.[1] I will first dismiss T & T's assertion that plaintiffs George Altman and Steve Farland's claims do not satisfy the minimum jurisdictional amount requirements for diversity jurisdiction and therefore the claims of those plaintiffs should be dismissed. As these plaintiffs, like the others, are seeking to have their default judgments determined to be a priority maritime lien pursuant to 46 U.S.C. § 911 *et seq.,* they have established federal question jurisdiction. The issue of whether the plaintiffs have pleaded a federal claim supporting jurisdiction is distinct from whether the plaintiffs have in fact stated a claim for which relief may be granted under the federal statute plaintiffs purportedly invoke. *See, e.g., Bell v. Hood,* 327 U.S. 678, 681–83, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946).[2]

◼ A more difficult question is whether this Court should "abstain" from this case

---

**1.** Defendant, T & T, has withdrawn its earlier contention that the plaintiffs are collaterally estopped from proceeding in this court by the denial of their motion for temporary restraining order by the Providence County Superior Court. It is unclear from defendant's pleadings, however, whether T & T still asserts that this Court should "abstain" from hearing this case on the grounds of avoiding duplicative litigation, especially given that T & T, in its most recent brief, has failed to argue the import of the numerous

pages of C. Wright, A. Miller, E., Cooper *Federal Practice and Procedure* (1978 & Supp.1985) which it attached to its memorandum of October 11, 1985, as I had requested. Nonetheless, I must address these issues as they relate to the jurisdiction of this Court.

**2.** In addition, there is diversity jurisdiction for six of the eight plaintiffs. As for the other two plaintiffs whose claims fail to satisfy the jurisdictional amount requirement, I can exercise

so as to avoid duplicative litigation,[3] because the plaintiffs have previously filed a very similar action in the Providence County Superior Court. First, I must rule the well-established doctrine that if a state court has already obtained possession, custody, or control of property, that possession may not be disturbed by any other court. *See, e.g., Mandeville v. Canterbury,* 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed.2d 605 (1943); *Norton v. Bridges,* 712 F.2d 1156 (7th Cir.1983). It might be argued that this rule should apply in this case because the plaintiffs are seeking to have the insurance settlement proceeds due to the defendant T & T, applied to the payment of the plaintiffs' claims; thus, the plaintiffs are seeking the distribution of a particular res which is also at issue in the state court proceeding.

I find, however, that this rule is not controlling here. It is not considered an interference with one court's exclusive control of a res for another court to adjudicate the right of an individual to that res in an *in personam* action. *See, e.g., Fischer v. American United Life Insurance Co.,* 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444 (1942); *Knaefler v. Mack,* 680 F.2d 671 (9th Cir. 1982). Accordingly, in this case I may also determine the rights of the parties to the insurance settlement proceeds without interfering with the Providence County Superior Court's jurisdiction.

In addition, the state court has not yet actually taken possession, control, or custody of the insurance settlement proceeds. All that transpired in the state court is that a temporary restraining order was denied, and the Nov. 1 hearing has been postponed for a number of weeks. The state court

has taken no action with respect to the specific res, the insurance settlement proceeds. *Compare Palmer v. State of Texas,* 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909) (appointment of receivers constitutes constructive possession); *Empire Trust Company v. Brooks,* 232 Fed. 641 (5th Cir.1916), *cert. denied,* 243 U.S. 655, 37 S.Ct. 480, 61 L.Ed. 948 (1917), *appeal dismissed,* 245 U.S. 634, 38 S.Ct. 133, 62 L.Ed. 522 (1917) (no appointment of a receiver or actual possession had been affected in state court). I am therefore not limited in this action to an adjudication of the rights of the parties to the insurance settlement proceeds as I would be if the state court did have sufficient possession, custody or control, *see Pufahl v. Parks' Estate,* 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133 (1936), but can also order an actual distribution of the property.

Although I have concluded that this action does not come within the rule relating to state court possession of a res, I must also consider whether I should abstain from hearing this case under the *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) "exceptional circumstances" test. In *Colorado River* the Supreme Court emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction.'" 424 U.S. at 817, 96 S.Ct. at 1246, (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762, 767 (1910)). The Court then went on to identify "exceptional" circumstances which might counsel

---

ancillary jurisdiction over their actions. Ancillary jurisdiction is often exercised to allow the federal court to hear the claims of all persons to given property, or in this case to the settlement monies. *See, e.g., Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860); *see also* 13 Wright, Miller & Cooper, *supra,* § 3523 at 87–89.

**3.** The United States Supreme Court has been unwilling to use the name "abstention" for the doctrine discussed in the text, but clearly recog-

nizes this category of cases as one in which federal courts should decline to exercise their jurisdiction in certain cases. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The commentators, however, have identified this doctrine as a fourth category of abstention used to avoid duplicative litigation. *See* 17 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 4247 (1978 & Supp. 1985).

against the exercise of jurisdiction by the federal court where there is a parallel state proceeding. The use of these factors as well as their exceptional nature were reiterated more recently in *Moses H. Cone Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). A district court, in deciding whether to stay federal proceedings should consider that: (1) the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts; (2) the inconvenience of the federal forum may counsel in favor of granting the stay; (3) the desirability of avoiding piecemeal litigation may favor a stay; (4) the order in which jurisdiction was obtained by the concurrent forums in terms of the progress of the two suits should be considered; and (5) the forum whose law provides the rule of decision on the merits should be considered. Only the clearest of justifications will warrant dismissal. *See Moses H. Cone*, 460 U.S. at 15–29, 103 S.Ct. at 937–44; *American Manufacturers Mutual Insurance v. Edward D. Stone, Jr.*, 743 F.2d 1519, 1525 (11th Cir.1984).

■ In examining these factors in the instant case, I find no reason why I should not exercise jurisdiction. As to the first factor, I have already considered it above and concluded that this action does not come within the rule relating to state court possession of property. As to the second factor, there is no indication that the federal forum is in any way inconvenient. As to the third factor, my deciding the merits of this case will not result in piecemeal litigation because the plaintiffs have agreed to dismiss the state court action if this Court retains jurisdiction. As to the fourth factor, although the state court first obtained jurisdiction, the action in this Court has progressed further. And as to the fifth factor, it clearly counsels towards my retention of this case as the principal issue to be decided on the merits is whether or not the plaintiffs have a priority maritime lien pursuant to 46 U.S.C. § 911 *et seq*. Accordingly, I will now adjudicate the merits of this action and determine whether the plaintiffs are entitled to a preliminary injunction.

Plaintiffs claim that they are entitled to a portion of the insurance settlement proceeds because they are holders of a preferred maritime lien pursuant to 46 U.S.C. § 911 *et seq*. Under 46 U.S.C. § 953(a), a preferred maritime lien includes a lien for damages arising out of tort. Thus, the plaintiffs assert that the judgments they have obtained from the Massachusetts District Court for personal injuries sustained when the fishing vessel Terry T sank, constitute liens for damages arising out of tort. Because the insurance settlement proceeds are the only assets, if any, that T & T possesses, the plaintiffs claim that their liens attach to that money and that their judgments should be satisfied from the proceeds *before* T & T pays off its other creditors, *i.e.*, Community.

■ The plaintiffs, however, cannot prevail on this argument. The law is well settled that the priorities they seek to rely on apply only in a proceeding *in rem* in admiralty. Thus, plaintiffs' tort judgments would only give rise to a preferred maritime lien in an action involving the sale or foreclosure of the ship. Once the ship itself is destroyed, as has occurred here, a proceeding *in rem* is no longer possible, and the priorities established by the admiralty statute no longer apply. *See* 46 U.S.C. § 953; *see also e.g., The Galena, Dubuque, Dunleith, & Minnesota Packet Co. v. Rock Island Railroad Bridge*, 73 U.S. (6 Wall.) 213, 216, 18 L.Ed. 753, 755 (1867) (proceeding *in rem* is the remedy afforded for the enforcement of maritime liens arising out of tort claims); *West of England Ship Owners v. Patriarch Steamship Co.*, 491 F.Supp. 539, 542 (D.Mass.1980) (referring to party's acceptance of position that a maritime lien may be executed only by an admiralty court in an *in rem* proceeding against the vessel or the proceeds after a judicial sale of the vessel, and that the lien is extinguished upon the loss or destruction of the vessel).

■ In addition, the plaintiffs seek to attach their lien to settlement monies which are the result of suits by T & T and Community because of various agents' and in-

surance companies' failure to insure. All of the cases I have found have uniformly held that a lien on a ship does not transfer into a lien on the insurance proceeds paid as a result of loss or damage to the ship. *Walsh v. Tadlock*, 104 F.2d 131 (9th Cir.), *cert. denied*, 308 U.S. 584, 60 S.Ct. 107, 84 L.Ed. 489 (1939); *The Donald T. Wright*, 30 F.Supp. 610 (W.D.Ky.1939); *A.M. Bright Grocery Co. v. Lindsey*, 225 Fed. 257 (S.D.Ala.1915).[4] This rule of law is consistent with a similar principle in insurance law generally, *i.e.*, in the area of fire insurance, one who has a mere lien only on the insured property has no claim to the insurance money realized by the insured. *See, e.g., Peoples State Bank of Ellinwood, Kansas v. Marlette Coach Co.*, 336 F.2d 3 (10th Cir.1964); *Michigan Fire and Marine Insurance Company v. Genie Craft Corp.*, 224 F.Supp. 636 (D.Md.1964). While the funds at issue in this case are not *per se* insurance proceeds, but rather money to be paid in settlement as a result of a suit for failure to insure, I believe that these settlement funds should be treated in the same manner as insurance proceeds because an insurance contract or the lack thereof is the basis for the settlement funds.

█ For the above stated reasons, I conclude that the plaintiffs cannot rely on the federal admiralty statute to press their claim of having a priority lien. The plaintiffs do have the right, however, to proceed *in personam* against T & T so as to execute their judgment liens. The question then becomes whether the settlement monies previously referred to are an asset of T & T's which the plaintiffs can proceed against or whether that money is, in fact, Community's.

█ The settlement is a result of separate suits between T & T and the insurance companies and agents and Community and the insurance companies and agents. Thus, it might be argued that, at least in part, the settlement monies belong to T &

T, itself. But, Community was the intended loss payee under the insurance policy T & T sought from its agent. But for some mix-up, Community would have been the beneficiary of insurance proceeds paid on the policy. Therefore, it is only logical to treat the settlement monies as one would an insurance policy—as a contract with the proceeds belonging to whoever is the loss payee. Consequently, the settlement monies are an asset of Community, not T & T, and the plaintiffs have no cause of action against Community. *See West of England Ship Owners Mutual Protection and Indemnity Association v. Patriarch Steamship Co.*, 491 F.Supp. 539 (D.Mass.1980). Accordingly, there is no reason to bar the completion of the settlement of the Superior Court cases, and the preliminary injunction is dissolved. Plaintiffs, of course, may proceed against any assets proven to belong to T & T.

---

**4.** I would note the difference in treatment in the case law between the insurance proceeds cases discussed in the text and those cases where the owners of the ship had a claim against others arising out of the operation of the ship and wrongful acts done to it. In the latter cases, a lien against the ship attaches to the proceeds which are recovered by reason of such a claim for damages. *See, e.g., The Donald T. Wright*, 30 F.Supp. 610 (W.D.Ky.1939).