In re HOT TIN ROOF, INC.

Arthur D. SMITH, Esq., Appellant,

v.

J. Christopher MARSHALL, United
States Trustee, Appellee.

BAP No. MB 96–033.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 18, 1997.

Arthur D. Smith, on brief for appellant.

Paula R.C. Bachtell, Department of Justice, Office of the United States Trustee, on brief for appellee.

Before GOODMAN, VAUGHN, and CARLO, Bankruptcy Judges.

GOODMAN, Bankruptcy Judge.

Arthur D. Smith, Esq., former counsel to Chapter 11 debtor Hot Tin Roof, Inc. ("HTR"), appeals from an order of the Bankruptcy Court denying Smith's application for fees and requiring him to disgorge all fees received in connection with the case on or after April 1, 1994. The Bankruptcy Court found that (1) at the time the petition was filed, Smith was not a disinterested person within the meaning of 11 U.S.C. § 327(a)[1] and Fed.R.Bankr.P. 2014(a),[2] and (2) Smith failed to disclose his connection with HTR and insiders of HTR, as well as adverse interests between HTR and two other debtor-corporations, Pequot Hotel, Inc. ("Pequot") and Wesley Hotel, Inc. ("Wesley"). We affirm.

This Court has jurisdiction pursuant to 28 U.S.C. § 158. The facts are not in dispute and we review conclusions of law *de novo*. *Holland v. Knoll*, 202 B.R. 646, 647 (D.Mass. 1996); *In re ATCORP I, Inc.*, 25 B.R. 340, 343 (1st Cir. BAP 1982).

## FACTS

On April 18, 1994, HTR filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Schedule D disclosed that Marquette Credit Union was the holder of a leasehold mortgage in the amount of $536,258.21. Schedule F listed a debt to Wesley in the amount of $1,100.00 and a debt to Pequot in the amount of $300.00. In conjunction with the petition, HTR filed an application to employ Smith, signed by Peter M. Martell, which represented that Smith " 'does not hold any interest adverse to this Estate, he is a disinterested party and this appointment will be to the best interest of this Estate [sic].' " *In re Hot Tin Roof, Inc.*, 94–12531–JNF at 3 (August 6, 1996). Smith's accompanying affidavit recited that he had " 'no connection with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.' " *Id.* The application to employ Smith was granted on April 21, 1994. Smith's disclosure of compensation, filed pursuant to Fed.R.Bankr.P. 2016(b), stated that HTR agreed to pay Smith $5,000.00 for legal services rendered in connection with the case with $2,500.00 having been paid prior to filing.

Pequot filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 22, 1994. Pequot included Marquette Credit Union as one of its four secured creditors listed on Schedule D. The Statement of Financial Affairs disclosed that Smith had been paid $20,292.64 between April 4, 1994 and November 15, 1994 for services rendered in connection with debt counseling and bankruptcy-related matters, payments having been made two weeks prior to HTR's bankruptcy filing and one week prior to Pequot's bankruptcy filing. Pequot also filed an application to employ Smith as

---

**1.** Section 327(a) of the Bankruptcy Code provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

**2.** Rule 2014(a) requires the applicant to set forth in the application, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants," and to accompany the application with a verified statement setting forth "the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." Fed.R.Bankr.P. 2014(a).

its attorney, signed by Peter M. Martell, which stated that Smith was a disinterested person. Smith's accompanying affidavit stated that he had no connection with Pequot, its creditors, or any parties-in-interest or their attorneys or accountants. This application was granted on December 6, 1994. Smith also filed a disclosure of compensation, pursuant to Fed.R.Bankr.P. 2016(b), which revealed that he expected to be paid $10,000.00 in fees and had already received a retainer in the amount of $1,000.00. During the course of the Pequot case, the Bankruptcy Court found that HTR was the primary obligor with respect to the obligation to Marquette Credit Union and that Pequot guaranteed the obligation, for no consideration, with a mortgage on its property in Oak Bluffs, Massachusetts.

Wesley filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 30, 1995. Marquette Credit Union was listed as a secured creditor on Schedule D and Pequot was listed as an unsecured creditor on Schedule F. The Statement of Financial Affairs showed payments to Smith of $4,000.00 in January 1995 and $4,195.00 in March 1995. Here, too, an application to employ Smith, signed by Peter M. Martell, was filed with the petition but its content was significantly different than the contents in the applications filed in the HTR and Pequot cases. Wesley stated that the attorney " 'does not hold any interest adverse to this Estate, *except as noted below* he is a disinterested party and this appointment will be to the best interest of this Estate [sic].' " *Id.* at 5 (emphasis added). The application further stated that (1) Smith was representing Pequot in another Chapter 11 proceeding; (2) Smith was representing HTR in another Chapter 11 proceeding; (3) Wesley had indemnified Pequot for a loan to Martha's Vineyard National Bank in the amount of $100,000.00; (4) Wesley was scheduled as an unsecured creditor in the Pequot case in the amount of $1,100.00 and that debt would be fully discharged; (5) Smith had represented officers and directors of Wesley individually in the past; and (6) HTR, Pequot, and the individual officers and directors were informed of Smith's representation of Wesley and consented to the representation.

Smith's accompanying affidavit echoed these disclosures. The disclosure of compensation, filed pursuant to Fed.R.Bankr.P. 2016(b), stated that Smith expected to receive $10,-000.00 in fees for services rendered in connection with the case but no retainer had been received.

On April 17, 1995, the Bankruptcy Court held a hearing on Wesley's application to employ Smith and Smith's applications for interim compensation filed in the HTR and Pequot cases. The court denied Wesley's application to employ, continued generally Smith's applications for interim compensation, and *sua sponte* appointed Chapter 11 trustees in all three cases because of the actual conflicts of interest arising from Smith's simultaneous representation of all three debtors, as well as the divergent interests of the three bankruptcy estates.

This appeal arises from the Bankruptcy Court's August 6, 1996 decision on the fee applications wherein the court found that Smith had "failed to make adequate disclosures in the HTR and Pequot cases," "the representations he made in the Pequot case were false, despite his affidavit to the contrary," and "Smith was not disinterested at the time the Pequot petition was filed." *Id.* at 7. The court then denied Smith "any fees in the HTR and Pequot cases and [ordered him] to disgorge any and all fees that he received from HTR or Pequot after April 1, 1994 that relate in any way to the bankruptcy petitions filed in those two cases." *Id.*

## DISCUSSION

Section 327 of the Bankruptcy Code permits the trustee (or debtor-in-possession, 11 U.S.C. § 1107(a)), upon court approval, to employ attorneys and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist with the administration of the case. 11 U.S.C. § 327(a). A person is disinterested if he "is not a creditor" or he "does not have an interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any

other reason." 11 U.S.C. § 101(14)(A), (E). Although the Bankruptcy Code does not define "interest adverse," it has been interpreted to mean

> 'the possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which ... of them the disputed right or title to the interest in question attaches under valid and applicable law; or ... [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.'

*Rome v. Braunstein,* 19 F.3d 54, 58 n. 1 (1st Cir.1994) (quoting *In re Roberts,* 46 B.R. 815, 826–27 (Bankr.D.Utah 1985)). The purpose of the disinterestedness requirement is to "'prevent even the appearance of a conflict ... which might be reflected in [the attorney's] decision[s] concerning estate matters.'" *In re Martin,* 817 F.2d 175, 181 (1st Cir.1987) (quoting *In re Codesco, Inc.,* 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982)). *See Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.),* 44 F.3d 1310, 1319 (6th Cir.1995) ("Congress sought to disqualify professionals with the appearance of a conflict of interest as well as those who have an actual conflict of interest."); *Rome v. Braunstein,* 19 F.3d at 58; *In re Roberts,* 46 B.R. 815, 838 (Bankr.D.Utah 1985).

■ The disinterestedness requirements must be strictly enforced. *In re EWC, Inc.,* 138 B.R. 276, 280 (Bankr.W.D.Okla.1992); *In re Roberts,* 46 B.R. at 839. "The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest as well as fee arrangements. They cannot pick and choose which connections are irrelevant or trivial." *In re EWC, Inc.,* 138 B.R. at 280. *See also Rome v. Braunstein,* 19 F.3d at 59 (recognizing the duty to disclose and the obligation of counsel to self-police); *In re Martin,* 817 F.2d at 182 ("There must be at a minimum full and timely disclosure of the details of any given arrangement."); *In re Guard Force Management, Inc.,* 185 B.R. 656, 660–63 (Bankr.D.Mass.1995); *In re Diamond Mortgage Corp.,* 135 B.R. 78, 89 (Bankr.N.D.Ill.1990); *In re Huddleston,* 120 B.R. 399, 400–01 (Bankr.E.D.Tex.1990).

■ "The reviewing court has no duty 'to search a file to determine for itself that a prospective attorney is not involved in actual or potential conflicts of interest.'" *In re Diamond Mortgage Corp.,* 135 B.R. at 97 (quoting *Glenn Elec. Sales Corp.,* 89 B.R. 410, 415 (Bankr.D.N.J.1988)). *See also In re Wilde Horse Enters., Inc.,* 136 B.R. 830, 839 (Bankr.C.D.Cal.1991) (the court has no duty "to search the file for possible same surnames or other indicia of conflicts or adverse interest"); *In re Roberts,* 46 B.R. at 839.

■ Section 328 of the Bankruptcy Code provides that the Bankruptcy Court may authorize "the employment of a professional person ... on any reasonable terms and conditions," 11 U.S.C. § 328(a), but

> the court may deny allowance of compensation for services and reimbursement of expenses ... if, at any time during such professional person's employment ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c). Where the professional maintains any connections proscribed by § 327(a) and does not disclose those connections, the attorney should expect nothing more than the denial of compensation requested and disgorgement of fees received. *Rome v. Braunstein,* 19 F.3d at 60 ("failure to make full and spontaneous disclosure of the financial transactions among [the debtor and insiders] ... provide[s] sufficient ground for the discretionary denial of compensation under section 328(c)"); *In re Guard Force Management, Inc.,* 185 B.R. at 664 ("failure to make required disclosures warrants the denial of all compensation requested and the disgorgement of all sums received"); *In re EWC, Inc.,* 138 B.R. at 280–81 (where attorney fails to disclose connections with the debtor, "[a]ny request for compensation [ ] must be denied, and any compensation received must be disgorged"); *In re Roger J. Au & Son, Inc.,* 71 B.R. 238, 242 (Bankr. N.D.Ohio 1986) ("Failure to disclose facts

giving rise to a conflict is an independent basis for denial of compensation."); *In re Roberts*, 46 B.R. at 847 ("a number of courts ... have ruled that the simple fact of failing to disclose any relationship with the debtor ... is sufficient to constitute a denial of fees").

Smith's position is that he did disclose, to the best of his knowledge, facts he was required to disclose pursuant to § 327(a). The Bankruptcy Court disagreed with Smith's position and we sustain the court's findings that Smith did not make adequate disclosures.[3] For example, Smith failed to disclose in the HTR case that he had, in the past, represented Peter M. Martell, the sole shareholder of HTR. In the Pequot case, Smith again failed to disclose his connections with Peter M. Martell, Pequot's president, and the connections between HTR and Pequot. Smith should have concluded that an actual conflict of interest existed and that there were adverse interests between HTR and Pequot that would prejudice creditors. Clearly, Smith recognized at a later time that the connections among the corporations warranted disclosure because significant disclosures were made in the Wesley application. Even then, however, the disclosures were inadequate in that they failed to identify the individual officers and directors whom Smith represented and when he represented them.

We believe that the Bankruptcy Court committed no error when it determined, as a matter of law, that Smith was not a disinterested person. The court was correct in denying Smith's application for employment in the Wesley case, terminating his employment in the HTR and Pequot cases, and *sua sponte* appointing trustees in all three cases. Further, the court was correct in denying Smith's requests for compensation and requiring him to disgorge the fees he had received. Smith had an obligation to disclose any and all connections he had with HTR and its insiders, and with Pequot, and to disclose

the adverse interests between HTR and Pequot, no matter how insignificant or irrelevant he may have believed those connections to be. Although some of the facts were within the four corners of the bankruptcy petitions, it was Smith's obligation to bring those facts before the Bankruptcy Court in the context of the applications to employ. The Bankruptcy Court's order is AFFIRMED.

---

represented most of its business community through the years. Unfortunately, these factors are insufficient to overturn the court's findings in light of the disclosure requirements of § 327(a) and Fed.R.Bankr.P. 2014(a).