PNC BANK, DELAWARE, Plaintiff,

v.

F/V MISS LAURA (O.N.542762)
in rem, Defendant.

Maine Shipyard & Marine Railway,
Inc., Intervening Plaintiff.

Civil Action No. 01–4427 (JEI).

United States District Court,
D. New Jersey.

Feb. 13, 2003.

Archer & Greiner by Joseph A. Martin, Haddonfield, NJ, Tompkins, Clough, Hirshon & Langer, P.A. by Leonard W. Langer (admitted pro hac vice), Portland, ME, for Plaintiff.

Lutz, Levow & Costello, P.A. by Kevin M. Costello, Cherry Hill, NJ, Cianciulli & Ouellette by Stephen M. Ouellette, Beverly, MA, for Intervening Plaintiff.

Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray by Richard B. Wickersham, Jr., Dennis P. Ziemba, Mount Laurel, NJ, for Defendant.

## OPINION

IRENAS, District Judge.

Presently before the court is Plaintiff PNC Bank's motion for summary judgment against Intervening Plaintiff Maine Shipyard & Marine Railway, Inc. Also before the court is Intervening Plaintiff Maine Shipyard & Railway, Inc.'s cross motion for summary judgment against Plaintiff PNC Bank, Delaware. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333. For the reasons set forth below, Plaintiff's motion for summary judgment is granted and Intervening Plaintiff's motion for summary judgment is rendered moot.

### I.

#### A.

The present dispute arises out of a mortgage foreclosure action between Plaintiff PNC Bank, Delaware ("PNC Bank") and Defendant F/V Miss Laura. That dispute involved a Loan Forebearance Agreement entered into by PNC Bank and David R. Greenly, the owner of the F/V Miss Laura. Alleging a default on the terms of that agreement, PNC Bank commenced the present action seeking the judicial sale of the F/V Miss Laura. Maine Shipyard & Maine Railway, Inc. ("Maine Shipyard") entered the action as an Intervening Plaintiff. Maine Shipyard claims it holds a maritime lien on the F/V Miss Laura, to the extent of her fishing permits and history, which has priority over PNC Bank's preferred mortgage lien. PNC Bank filed a motion for summary judgment arguing that Maine Shipyard's failure to provide any necessaries to the F/V Miss Laura precludes it from asserting a maritime lien on that vessel. Therefore, PNC Bank asks this Court to dismiss Maine Shipyard from this action.

#### B.

In July 1997, Maine Shipyard provided parts and labor for repair of the engine of the F/V Miss Penelope. Maine Shipyard alleges that it has not been compensated for the repairs it made to the F/V Miss Penelope. The F/V Miss Penelope was a commercial fishing vessel owned at all times relevant hereto by Greenly. On January 28, 1998, the F/V Miss Penelope sank and could not be salvaged.

In order to obtain limited access fishing rights for a vessel that is intended to replace a sunken or destroyed vessel, the regulations initially require that the applicant's eligibility to apply for those rights be preserved. 50 C.F.R. Ch. VI § 648.4(a)(1)(i)(J). An applicant must submit an application for and receive a confirmation of the destroyed vessel's permit history ("CPH"). *Id.* Once the National Marine Fisheries Service has issued the CPH, the applicant is then eligible to apply for a limited access permit for a replacement vessel based on the qualifying vessel's permit history. *Id.*

After the F/V Miss Penelope sank, Greenly submitted an application for a CPH for the F/V Miss Penelope to the National Marine Fisheries Service. On March 26, 1998, the National Marine Fisheries Service issued to Greenly a CPH for the express purpose of replacing the F/V Miss Penelope.

On September 11, 1998, Greenly acquired the F/V Miss Laura, a commercial fishing vessel intended to replace the F/V Miss Penelope. Greenly then submitted an application to the National Marine Fisheries Service for limited access fishing permits for the F/V Miss Laura along with the above referenced CPH. On July 27, 1999, the National Marine Fisheries Service approved the vessel replacement of the F/V Miss Penelope with the F/V Miss Laura. On July 29, 1999, the National Marine Fisheries Service issued limited access fishing permits to the F/V Miss Laura.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

### A.

PNC Bank seeks the dismissal of Maine Shipyard from the action on the grounds that Maine Shipyard has no rights to the F/V Miss Laura under maritime lien law. Maine Shipyard worked on the F/V Miss Penelope, but not the F/V Miss Laura. Since maritime liens cannot survive a vessel's destruction or submergence, *Walsh v. Tadlock*, 104 F.2d 131, 132 (9th Cir.1939), PNC Bank argues that any maritime lien Maine Shipyard could claim against the F/V Miss Penelope was extinguished when that vessel sank and could not be recovered.

In their opposition to summary judgment, Maine Shipyard claims that the maritime lien it possessed on the F/V Miss Penelope transferred to the F/V Miss Laura when Greenly obtained new limited access permits for the F/V Miss Laura based on the confirmation of the F/V Miss Penelope's fishing history. Maine Shipyard argues that maritime liens attach to the vessel and the vessel's appurtenances, including the vessel's commercial fishing permits. Relying on the rule that maritime liens may be imposed on salvaged portions of vessels, Maine Shipyard argues that it maintained the right to assert a maritime lien against the commercial fishing permits and permit history of the F/V Miss Penelope as salvaged appurtenances of that vessel. When Greenly obtained new fishing permits for the F/V Miss Laura based on the F/V Miss Penelope's fishing permits and permit history, Maine Shipyard argues that the maritime lien followed.

The parties agree that there is no genuine issue of material fact, and so therefore summary judgment is proper. The central issue to be decided is whether Maine Shipyard's maritime lien, valid as against the

F/V Miss Penelope, continues to be valid against the F/V Miss Laura. Since the process undertaken to preserve the F/V Miss Penelope's fishing permit history does not fall within the standard definition and understanding of the term "salvage", this Court holds that Maine Shipyard's maritime lien against the F/V Miss Penelope was extinguished when the F/V Miss Penelope sank and could not be saved.

## B.

■ "A maritime lien is a privileged claim upon maritime property ... arising out of services rendered to or injuries caused by that property." Schoenbaum, *Admiralty and Maritime Law, Third Edition*, § 9–1, p. 494 (2001). Once a maritime lien attaches to the property, it remains adhered to that property "until it is either executed through the *in rem* legal process ... or is somehow extinguished by operation of law." *Id.* The general rule provides that the total destruction of a vessel will extinguish all maritime liens existing on that vessel. *Walsh*, 104 F.2d at 132. However, "if only part of the vessel is destroyed ... the lien will attach to the remaining part." Schoenbaum, *Admiralty and Maritime Law, Third Edition*, § 9–7 (2001).

■ Even if we accept that the F/V Miss Laura's fishing permits are properties related to the F/V Miss Penelope, the rule on which Maine Shipyard relies is inapplicable here. That rule assumes that some physical part of the vessel has been salvaged in some way.[1] "[I]t is equally well settled, that if any part of the vessel is saved, [the] lien adheres to it, *even to the last plank.*" *Collins v. The Fort Wayne*, 6

F.Cas. 119, 122 (S.D.Ohio 1861) (emphasis added). When some physical portion of a vessel is salvaged, a maritime lien may attach to it, but if the entire vessel has been destroyed, all maritime liens against that vessel are extinguished.

■ The traditional definition of salvage requires some kind of "saving or rescuing." *Webster's Third New International Dictionary* 2006 (1993). Furthermore, the law defines salvage as the "service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended." *Cargill v. M/T Pacific Dawn*, 876 F.Supp. 508, 511 (S.D.N.Y. 1995). The process as defined in the regulations for obtaining a confirmation of a vessel's permit history does not fall within the standard definition and understanding of salvage.

Under the regulations, a person eligible to obtain a CPH must apply "no later than 30 days prior to the end of the first full fishing year in which a vessel permit cannot be issued." 50 C.F.R. Ch. VI § 648.4(a)(1)(i)(J). The CPH application process is not one that is done in the presence or apprehension of distress or danger.

Furthermore, the confirmation of permit history only "preserves the eligibility of the applicant to apply for a limited access permit for a replacement vessel based on the qualifying vessel's fishing and permit history at a subsequent time." *Id.* The CPH preserved Greenly's eligibility to apply for subsequent limited access fishing

---

1. All cases of salvage involve some physical piece of the vessel. There is no precedent for the proposition that salvage has ever been defined as extending beyond a physical part of the vessel. *See Cargill v. M/T Pacific Dawn*, 876 F.Supp. 508 (S.D.N.Y.1995); *Eagle Star & British Dominions v. Tadlock*, 22 F.Supp. 545 (S.D.Cal.1938); *U.S.D.J. The Convoy*, 257 F. 843 (E.D.N.Y.1919); *Chapman v. The Engines of the Greenpoint*, 38 F. 671 (S.D.N.Y. 1889); *Collins v. The Fort Wayne*, 6 F.Cas. 119 (S.D.Oh.1861).

permits, it did not save or rescue any portion of the F/V Miss Penelope.

Construing the facts and inferences in a light most favorable to the non-moving party, Maine Shipyard held a valid maritime lien on the F/V Miss Penelope prior to its demise. However, once the F/V Miss Penelope sank and was destroyed in January 1998, Maine Shipyard's maritime lien was extinguished. Greenly's acquisition of subsequent limited access fishing permits for the F/V Miss Laura based on the fishing and permit history of the F/V Miss Penelope does not constitute a salvage of the F/V Miss Penelope or its appurtenances.

### C.

Having decided that Maine Shipyard's maritime lien against the F/V Miss Penelope was extinguished when that vessel was destroyed, Maine Shipyard will be dismissed from this action. Maine Shipyard's Cross Motion for Summary Judgment, therefore, is rendered moot and need not be considered.

### IV.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment against the Intervening Plaintiff is granted. Accordingly, Maine Shipyard's motion for summary judgment is rendered moot. The Court will enter an appropriate order.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING INTERVENING PLAINTIFF FROM THE ACTION AND DENYING INTERVENING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT**

This matter having appeared before the Court upon Plaintiff's motion for summary judgment and Intervening Plaintiff's motion for summary judgment, the Court having considered the submissions of the parties, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

IT IS on this *13th* day of February, 2003,

**ORDERED THAT:**

1. Plaintiff PNC Bank, Delaware's motion for summary judgment is **GRANTED** and Intervening Plaintiff Maine Shipyard and Marine Railway, Inc. is hereby **DISMISSED** from this action.

2. Intervening Plaintiff Maine Shipyard and Marine Railway, Inc.'s motion for summary judgment is **DENIED** as moot.