**In re EWC, INC., Debtor.**

**Bankruptcy No. 91–5033–BH.**

United States Bankruptcy Court,
W.D. Oklahoma.

March 18, 1992.

Charles E. Snyder, Oklahoma City, Okl., for the Office of the United States Trustee.

Thomas S. Bala, pro se.

## ORDER GRANTING MOTION TO SET ASIDE EMPLOYMENT OF DEBTOR'S ATTORNEY AND FOR DISGORGEMENT OF RETAINER AND FEES

RICHARD L. BOHANON, Chief Judge.

The United States Trustee moves to set aside the employment of Thomas S. Bala as attorney for the debtor in possession and for disgorgement of fees paid to him in connection with this case.

Of all the issues which this court reviews, those involving attorney misconduct are the most difficult, troubling, and frustrating. Unfortunately, disregard of fee and conflict disclosure requirements related to attorney employment applications and subsequent fee requests appears to be an ever present and growing problem in the bankruptcy system.

The court believes it is necessary to state the consequences to a professional due to a failure to comply with employment and fee disclosure requirements.

After a hearing and review of the relevant documents, the following findings of fact and conclusions of law are made and it is ordered that the employment of Thomas S. Bala is set aside and all fees and retainers paid to him in connection with this case must be disgorged and paid to the trustee.

## BACKGROUND

The debtor in this case is a large closely held family corporation which was in the business of writing and selling consumer appliance warranties nationwide. Numerous proceedings in the case concern allegations of acts of impropriety and mismanagement of the debtor by the sole shareholder and chairman, Baird Trice, and other members of his family.

For approximately two months pre-petition and one month post-petition, Bala represented Trice in a divorce action and concurrently represented the debtor.

Bala received $4,562 for his services in the divorce action, $11,925 for his services to the debtor, and a $15,000 retainer for services to be rendered as attorney for the debtor-in-possession. Bala filed his Affidavit of Disinterestedness and Application for Authorization to Employ an Attorney, as required by Fed.R.Bankr.Pro. 2014(a) and 2016(b), while representing all these interests. In these papers he disclosed only representation of the debtor-in-possession and receipt of the $15,000 retainer. Using boiler plate language, derived from relevant sections of the Bankruptcy Code, he conspicuously denied the existence of any conflict of interest in his representation and did not mention that he represented Trice and the Debtor.

Bala continued to represent the debtor-in-possession until a trustee was appointed. Investigations by the trustee produced billing statements and canceled checks related to employment of Bala by the debtor pre-

petition. Correlation of this information with Bala's application and affidavit led to these motions.

The U.S. Trustee makes two arguments. First, he argues that violation of the disclosure requirements, without more, is adequate ground for requiring disgorgement. He contends that violation of a rule of this importance, whether the connection omitted indicates a conflict of interest or not, should carry a penalty or the rule is of no affect.

Secondly, he argues that representation of both the debtor and its sole shareholder in actions where the attorney must take positions adverse to one of these clients is exactly the evil to be avoided by the disinterestedness and disclosure requirements of 11 U.S.C. §§ 327(a) and 329(a) and therefore, disgorgement of fees is mandated. He contends that employment must be denied pursuant to 11 U.S.C. § 327(a), and fees denied pursuant to 11 U.S.C. § 328(c), on the basis of the mere presence of a conflict, no matter how trivial it may first appear. He contends that harm to the estate is not a factor in the analysis under these sections.

In reply, Bala makes two arguments. First he argues that his dual representation of the debtor and Trice did not present a conflict of interest. Therefore, he argues that he did not violate the disinterestedness and disclosure requirements of 11 U.S.C. §§ 327 and 329.

Next, he urges this court to adopt a no harm—no foul rationale. He contends that although the potential for conflict existed, his services were in the best interests of the estate. He argues the court has discretion in applying remedies when the disclosure rules have been violated and that the remedy of fee disgorgement is unwarranted when there has been no harm to the estate.

### DISINTERESTEDNESS AND DISCLOSURE DUTIES AND REQUIREMENTS

■ Because of the common fund nature of bankruptcy estates and, in part, due to past problems associated with attorney employment and compensation professionals performing duties for the estate are held to high fiduciary standards, and act as officers of the court. *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1935); *Woods v. City Natl Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); *York Intl Bldg. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 937 (2d Cir.1979); *Matter of Consolidated Bancshares*, 785 F.2d 1249, 1255 (5th Cir. 1986).

In order to assure compliance with these duties the 1978 Bankruptcy Code implemented a system of checks and balances on employment and compensation of professionals for, previously, "the Bankruptcy system operate(d) more for the benefit of attorneys than for the benefit of creditors." H.Rep. No. 595, 95th Cong., 2d Sess. 92, reprinted in 1978 *U.S.Code Cong. and Admin.News* 5787, 6053. Towards this end, Congress enacted standards for professional employment and compensation in the Bankruptcy Code "to guard against a recurrence of the "sordid chapters" in the history of fees in corporate reorganizations." S.Rep. No. 989, 96th Cong., 2d Sess. 40, reprinted in 1978 *U.S.Code Cong. and Admin.News* 5787, 5826.

These standards include the specific requirement that professionals have no conflict of interest with the estate, as set forth in §§ 327(a) and 329(a); and that the services provided be for the benefit of the estate and fees be reasonable, all as set forth in § 330(a). Except for three narrow exceptions, the Bankruptcy Code does not contain provisions allowing a waiver of these standards, as might be available outside of bankruptcy. *In re Lee*, 94 B.R. 172, 177 (Bankr.C.D.Cal.1988); *In re Kuykendahl Place Assoc., Ltd.*, 112 B.R. 847 (Bankr. S.D.Tex.1989); *In re Diamond Mortgage Corp.*, 135 B.R. 78, 90 (Bankr.N.D.Ill.1990).

The bankruptcy court is authorized to approve employment and compensation only after a determination that these standards have been met. The court cannot adequately perform this function without

full disclosure by the professional employed for the estate. *In re Roberts*, 75 B.R. 402, 410–11 (D.Utah 1987). Consequently, disclosure duties and the requirements necessary to fulfill them have been provided in the Bankruptcy Rules. *See* Fed.R.Bankr.Pro. 2014(a) and 2016(a) & (b).

■ These disclosure requirements are not discretionary. The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest as well as fee arrangements. They cannot pick and choose which connections are irrelevant or trivial. See *In re Roberts*, 75 B.R. 402, 410 (D.Utah 1987); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 932 (2d Cir.1979).

The bankruptcy court has neither the obligation nor the resources to investigate the truthfulness of information supplied, or to seek out conflicts of interest not disclosed. *See In re Estes*, 57 B.R. 158, 161 (Bankr.N.D.Ala.1986); *In re Roberts*, 46 B.R. 815, 839 (Bankr.D.Utah 1985). As a consequence, professionals employed for the estate are nearly self policed.

In order to assure compliance with their duties there are independent consequences imposed by the Bankruptcy Code which come into play if these self policed fiduciaries violate either the disinterestedness or disclosure requirements.

## CONSEQUENCES OF VIOLATION OF DISCLOSURE DUTIES

■ Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were *de minimis*. See *In re Thompson*, 54 B.R. 311, 316 (Bankr.N.D.Ohio 1985); *In re Kero-Sun, Inc.*, 58 B.R. 770, 777–81 (Bankr. D.Conn.1986); *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643, 653 (Bankr.W.D.Wash.1986); *In re Kendavis*

*Indus. Intl, Inc.*, 91 B.R. 742, 759 (Bankr. N.D.Tex.1988); *In re Lee*, 94 B.R. 172, 177 (Bankr.D.Cal.1988); *In re BH & P, Inc.*, 103 B.R. 556, 567 (Bankr.D.N.J.1989); *In re Saturley*, 131 B.R. 509, 517 (Bankr. D.Me.1991).

The Supreme Court has held that the only way to assure that professionals maintain the requisite standards of fiduciary conduct is to strictly enforce compliance with the conflict of interest rules by denial of compensation. *See Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).[1] The Court further held that strict enforcement of the conflict of interest rules would act to deter violations of fiduciary duties by persons employed for the estate. *Id*, at 268, 61 S.Ct. at 497, citing *Weil v. Neary*, 278 U.S. 160, 173, 49 S.Ct. 144, 149, 73 L.Ed. 243 (1929). It said that the mere presence of a conflict, even if no resulting harm had befallen the estate, justified denial of compensation. *Woods*, 312 U.S. at 268, 61 S.Ct. at 497.

We agree with those courts that require strict compliance with the disclosure requirements, independently of a finding of any actual conflict of interest, in order to give effect to the disinterestedness requirements of the Bankruptcy Code. *See In re Arlan's Dept Stores, Inc.*, 615 F.2d 925 (2d Cir.1979); *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981); *In the Matter of Georgetown Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984). Compliance with these requirements is necessary to maintain the integrity of the bankruptcy system.

■ Therefore, if a person has at any time during employment by the estate, any "connections with the debtor, creditors, any other party in interest, their attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee", pursuant to Fed. R.Bankr.Pro. 2014(a), and fails to disclose those "connections" to the best of his or

---

**1.** This case was decided under former Rule 215(b) which reads "If without disclosure any attorney or accountant employed by the trustee ... shall represent or hold, or shall have represented or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both...."

her knowledge, it is necessary and appropriate that employment of that person must be set aside to carry out the provisions of the Bankruptcy Code. Any request for compensation also must be denied, and any compensation received must be disgorged.

This determination protects the bankruptcy system. In addition, professionals seeking employment with estates will have fewer problems determining which connections are to be disclosed for all connections must be disclosed. The professional cannot pick and choose which connections to disclose. No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it. The court and interested parties are then informed and the professional does not run the risk of serving the estate *pro bono*.

### CONSEQUENCES OF VIOLATION OF DISINTERESTEDNESS REQUIREMENTS

Although the remedies are similar, violation of the disclosure rules and violation of the disinterestedness requirements are independent. Therefore, our analysis does not stop with Bala's violation of the disclosure rules.

■ The Bankruptcy Code provides three possible consequences to professionals, such as Bala, that have a conflict of interest during employment. First, pursuant to § 327(a) the court must set aside the employment of that professional. *In re Estes*, 57 B.R. 158, 161 (Bankr.N.D.Ala. 1986); *In re Gray*, 64 B.R. 505, 508 (Bankr. E.D.Mich.1986); *In re Roberts*, 75 B.R. 402, 407 (D.Utah 1987); *In re Watson*, 94 B.R. 111 (Bankr.S.D.Ohio 1988); *In re Watervliet Paper Co., Inc.*, 96 B.R. 768, 770 (Bankr.W.D.Mich.1989); *In re Amdura Corp.*, 121 B.R. 862, 869 (Bankr.D.Colo. 1990), and *see In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 326 (Bankr.N.D.Ohio 1984); *In re PHM Credit Corp.*, 99 B.R. 762 (E.D.Mich.1989); *In re Rusty Jones, Inc.*, 134 B.R. 321, 341 (Bankr.N.D.Ill. 1991).

■ The Bankruptcy Code prohibits employment of professionals who hold or represent an interest adverse to the estate and who are not "disinterested persons." 11 U.S.C. § 327(a). In other words, the court does not have the authority to allow employment of a professional with a conflict of interest. Such employment is void *ab initio*. *In re Gray*, 64 B.R. 505, 507-08 (Bankr.E.D.Mich.1986). Most courts find this proscription to be continuing, resulting in the ongoing jurisdiction of the court to disqualify persons with a conflict of interest. *See In re Estes*, 57 B.R. 158, 161 (Bankr.N.D.Ala.1986); *In re Roberts*, 75 B.R. 402, 407 (D.Utah 1987); *In re Amdura Corp.*, 121 B.R. 862, 869 (Bankr.D.Colo. 1990).

■ Second, the court must deny compensation for services performed during the conflict, pursuant to § 330(a). There are two reasons for the required denial of compensation. First, compensation is awarded under § 330(a) only to officers of the estate. *See In re Fiberglass Specialty*, 12 B.R. 119, 121 (Bankr.D.Minn.1981). A professional becomes an officer of the estate only through valid employment pursuant to § 327(a). Any professional who holds or represents an interest materially adverse to the estate and is employed by the estate as a consequence of a violation of the disclosure rules, or comes into that conflict subsequent to employment, is not an officer of the estate during the time of the conflict and therefore is not entitled to compensation under § 330(a). See *In re Gray*, 64 B.R. 505, 507-08 (Bankr. E.D.Mich.1986) (employment void *ab initio* ).

■ Second, the requested compensation must be denied on the basis that it is unreasonable, because "reasonable compensation for services rendered necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act." *Woods v. City Natl Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941).

The third consequence to a professional who is not disinterested also involves denial of compensation. The court is given discre-

tion to deny any part of compensation for services performed outside of the conflict, pursuant to § 328(c). This remedy has been used both as a penalty and as an equitable tool to allow compensation which is otherwise not allowed under §§ 327(a) and 330(a).

■ Section 328(c) was placed in the Code to provide the court with an optional "penalty" for professionals who entered into a conflict of interest with the estate. H.Rep. No. 95–595, 95th Cong., 1st Sess. 328–29 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 39 (1978). Professionals employed for the estate are under a continuing duty to disclose their connections. *In re Diamond Mortgage Corp.*, 135 B.R. 78, 90 (Bankr.N.D.Ill.1990). Upon disclosure of a conflict immediate disqualification is required by § 327(a). Denial of their compensation for services rendered during the conflict is required by § 330(a). After application of these provisions, there is little room left for the bankruptcy court to exercise the discretion granted to it in § 328(c). Harmonization of the discretion in § 328(c) with these provisions leaves application of § 328(c) to those circumstances when a disinterested professional enters into employment with the estate and only subsequently comes into a conflict.

Section 328(c) allows the court discretion to deny or allow compensation based on the circumstances of the case. For instance, the court may be faced with the situation where professionals intentionally come into conflict with the best interests of the estate subsequent to employment, or conversely those professionals may have inadvertently come into a conflict of interest with the estate after employment has commenced.

Section 328(c) gives the court the ability to penalize the intentional wrongdoer by denying compensation to that professional, which would otherwise be allowed under § 330(a), for the period in which there was no conflict. On the other hand the court can award compensation to the innocent professional for that same period.

■ A majority of courts faced with a request to compensate a professional who is invalidly employed as a consequence of violating the disclosure rules have fashioned another remedy under § 328(c) in contravention of the proscription of § 327(a) and the requirements for allowance of compensation under § 330(a). This remedy acts as an exception to § 327(a).

These courts "penalize" the person violating the disclosure and disinterestedness requirements by exercising discretion under § 328(c) to partially deny requested compensation on an equitable basis therefore giving affect to the invalid employment. As one court aptly stated, "what most often gives rise to opinions in this area is not the application of § 327 of the Code but rather the efforts by the courts in seeking to find justification for not applying the strict mandate of the statute." *In re Amdura*, 121 B.R. 862, 864 (Bankr. D.Colo.1990). We fail to understand how the payment of any compensation to persons who have violated the Bankruptcy Rules, violated their fiduciary duties, and deceived the court into exceeding its authority under § 327(a) serves as an effective "penalty" to anyone but the bankruptcy system itself.

The Bankruptcy Code provides only three specific, narrow exceptions to the disinterestedness requirements. See 11 U.S.C. §§ 327(c) (a professional may represent the estate and a creditor), 327(e) (trustee may employ an attorney who represented the debtor for special purposes), and 1107(b) (an attorney representing the debtor may represent a debtor-in-possession). Absent the presence of one of these circumstances, a person who is not disinterested may not be employed. There is no language in the Code or any indication in the legislative history which this court could find that supports the use of § 328(c) to justify court made exceptions to § 327(a) in addition to the three provided at §§ 327(c), 327(e), and 1107(b).

To allow a court to, in essence, approve employment as an officer of the court retrospectively by allowing payment for services rendered during a conflict pursuant to § 328(c), when that same court may not do so prospectively, pursuant to § 327(a), is illogical, does not give effect to § 327(a),

and gives little respect to the Bankruptcy Code.

 Courts fashioning this exception to § 327(a) are troubled by the perceived inequity of denying compensation for services rendered under a conflict when the services actually benefitted the estate. Partial compensation for such services may be allowable under § 503(b)(1)(A) as administrative expenses, if the services provided by the professional who is not disinterested were necessary to preserve the estate.[2] Partial compensation for the services of an attorney for the debtor-in-possession may also be allowable under § 506(c), if a secured creditor benefitted from or consented to them.[3] The court however, may not grant an administrative priority on equitable grounds alone. *In re Chateaugay Corp.*, 115 B.R. 760, 772 (Bankr.S.D.N.Y. 1990); *In re Baldwin United Corp.*, 43 B.R. 443, 456–57 (S.D.Ohio 1984).

Professionals performing services for the debtor-in-possession should not regard these remedies as a license to sidestep the requirements of § 327(a) and § 330(a). The standard of proof necessary for a claim to be allowed under either § 503(b)(1)(A) or § 506(c) is a overwhelming barrier to most requests made under these sections.

 Both § 503(b)(1)(A) and § 506(c) provide for allowance of compensation of a far narrower class of services than § 330(a). Under § 503(b)(1)(A) the services provided must not only benefit the estate as under § 330(a), but they must serve to "maintain, preserve, or rehabilitate the ... estate." *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976). Such services must benefit all the creditors, be necessary for a successful reorganization, and generally arise from operating the estate in the overall interests of the creditors. *See Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976); *In re Jartran*, 732 F.2d 584, 587 (7th Cir.1984); *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987); *In re Amarex*, 853 F.2d 1526 (10th Cir.1988). Under § 506(c) the services must be necessary to preserve or dispose of the collateral and benefit the secured creditor. *In re Trim-x, Inc.*, 695 F.2d 296 (7th Cir.1982). Proof of a direct benefit to the secured creditor is required and such proof is difficult. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984).

 Under the guidelines for § 503(b)(1)(A), compensation sought must generally arise from operation of the estate as opposed to mere administrative activities related to the bankruptcy. Services of a professional resulting in preservation of the estate from waste or damage, or exemplary services resulting in confirmation of a plan of reorganization with exceptional benefits for creditors are examples of the type of services which might be allowed as administrative expenses under § 503(b)(1)(A).

## ANALYSIS

 Applicability of any of these remedies to the case at hand requires a determination of the disinterestedness of Bala.

**2.** There is a split of authority as to the applicability of § 503(b)(1)(A) to the allowance of compensation of professionals employed by the debtor-in-possession. The majority follow the reasoning of the Third Circuit and hold that professionals employed by the debtor-in-possession may only be allowed compensation as an administrative expense pursuant to § 503(b)(2) if the requirements of § 327(a) and § 330(a) are met. *In re F/S Airlease II, Inc.*, 844 F.2d 99, 108–09 (3d Cir.1988). The minority follow the holding of the Fourth Circuit and find that § 503(b)(1)(A) is applicable to the allowance of compensation of some professionals employed by the debtor-in-possession. *In re Goodman*, 809 F.2d 228, 231 (4th Cir.1987).

**3.** There is also a split of authority as to the applicability of § 506(c) to the allowance of compensation of professionals employed by the debtor-in-possession. The Third and Ninth circuits give an expansive interpretation to § 506(c) and allow standing under that section for persons other than the trustee. *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986); *In re Palomar Truck Corp.*, 951 F.2d 229 (9th Cir.1991) and see *In re Chicago Lutheran Hosp. Assos.*, 89 B.R. 719, 726 (Bankr.N.D.Ill. 1988). Several bankruptcy courts have given a narrow interpretation to § 506(c) and allow standing for compensation of expenses only to the trustee. *See In re Great Northern Forest Products, Inc.*, 135 B.R. 46 (Bankr.W.D.Mich. 1991).

We find for the following reasons that Bala was not disinterested.

■ Concurrent representation of the debtor-in-possession and its sole shareholder, as in this case, is not *per se* a conflict of interest. *In re Global Marine, Inc.*, 108 B.R. 998 (Bankr.S.D.Tex.1987). Quite often, the principal shareholder and the debtor-in-possession have a common interest, rehabilitation.[4] However, concurrent representation of the debtor-in-possession and its sole shareholder may be a conflict of interest because "a lawyer owes his allegiance to the entity and not to the stockholder, director, officer, employee, representative or other person connected with the entity." *In re King Resources Co.*, 20 B.R. 191, 200 (D.Colo.1982), and *see In re Grabill Corp.*, 113 B.R. 966, 969 (Bankr. N.D.Ill.1990); *In re Kendavis Industries Intl, Inc.*, 91 B.R. 742, 752 (Bankr.N.D.Tex. 1988); *In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 243 (Bankr.N.D.Ohio 1986).

The professional representing both the debtor-in-possession and its shareholder is disqualified only when the representation of the shareholder puts the professional in a position where that person "holds or represents an interest adverse to the estate" or is no longer disinterested as defined in 11 U.S.C. § 101(14).

The undisputed evidence in this case shows that Bala, from the beginning of his employment by the estate, could not act solely in the estate's interest and at the same time protect the interests of Trice. As attorney for the debtor-in-possession Bala was required to and did, file complaints against Trice for recovery from him of property of the estate. In addition, in order to protect the interests of Trice in the divorce action, Bala would necessarily have to take positions adverse to the arguments he was advocating for the estate in the adversary proceedings.[5] "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Roger J. Au & Son, Inc.*, 101 B.R. 502, 505 (Bankr.N.D.Ohio 1989).

■ There is some evidence that Bala did not cause any harm to the estate and did act in its best interests. This does not change the plain fact that the conflict exists nor does it alter his disqualification and denial of compensation. *Woods v. City Natl Bank & Trust*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); *In re Futuronics*, 655 F.2d 463, 471 (2d Cir. 1981); *In re Georgetown Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984), and *see In re Martin*, 817 F.2d 175, 183 (1st Cir.1987). The disinterested requirement is intended to "prevent even the appearance of conflict irrespective of the integrity of the person or firm under consideration." *In re Martin*, 817 F.2d 175, 181 (1st Cir.1987).

■ Further, we find that the services Bala provided did not maintain, preserve, or rehabilitate ... the estate, nor did they benefit a secured creditor. The services provided by him involved bankruptcy administrative matters, including filing the petition, filing requests for extensions of time in which to file schedules, and filing adversary proceedings seeking to recover preferential transfers. These services did not relate to the operation of the business nor did they maintain or enhance the value of the estate for the overall benefit of the creditors. Neither did the services relate to the preservation or disposal of collateral.

---

**4.** See *In re O'Connor*, 52 B.R. 892, 899 (Bankr. W.D.Okla.1985) where the court found a common interest in rehabilitation to exist between the debtor-in-possession and counsel to the debtor-in-possession who owned shares in the debtor; *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 166 (Bankr.D.Ariz.1984) (question is, whether conflict is materially adverse); *In re Maui 14K, Ltd.*, 133 B.R. 657, 659 (Bankr. D.Haw.1991) (finding that in most circumstances the same attorney may represent both the debtor and the principal shareholder because the parties have a common interest).

**5.** Testimony of the attorney for Mrs. Trice in the divorce action established that Bala's representation of Trice required him to argue in defense of Trice against allegations of waste and dissipation of assets of the debtor, allegations of mismanagement of the debtor, and allegations of fraudulent transfers of assets of the debtor, positions opposite to those he must take in the adversary proceedings.

In addition to his violation of the disinterestedness requirements, we find that Bala totally failed to meet the disclosure requirements. He failed to disclose his representation of the sole shareholder, the payment received for those services, and further, he failed to disclose his pre-petition representation of the debtor and the payment received for those services.

## DECISION

We find for the following reasons that the employment of Bala must be set aside, compensation and reimbursement must be denied, and any compensation received by him in connection with this case must be disgorged. First, he violated the duty of disclosure which duty requires strict compliance. Fed.R.Bankr.Pro. 2014(a) and 2016(b). Second, his employment was void *ab initio*, pursuant to § 327(a), and he is not entitled to any compensation, pursuant to § 330(a), because he represented an interest adverse to the estate and he was not disinterested. Third, Bala's services were not entitled to allowance as an administrative expense under either § 503(b)(1)(A) or § 506(c) because they did not maintain, rehabilitate or enhance the value of the estate for the benefit of all creditors, nor did they benefit a secured creditor.

Accordingly, it is ordered that the order approving Bala's employment is set aside and any compensation is denied. It is further ordered, upon such date as to which the parties agree or the court on motion may fix, that he disgorge the $15,000 retainer received for his services in this case and the $2,700 received for pre-bankruptcy planning.