In re GUARD FORCE MANAGEMENT, INC., Debtor.

Bankruptcy No. 94–16905–JNF.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 10, 1995.

Neil M. Kerstein, Quincy, MA.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the application of Neil M. Kerstein, Esq. ("Kerstein" or "counsel"), counsel to Guard Force Management, Inc. (the "Debtor"), for compensation in the amount of $46,335.80 for legal fees and expenses. The Court scheduled a hearing on Kerstein's fee application for June 8, 1995. At the hearing, the United States Trustee orally objected to the fee application on the ground that the fees requested were excessive. However, based upon the record of this case and a prior Chapter 11 case filed by the Debtor, the Court is called upon to determine not just whether Kerstein's fees are excessive, but whether Kerstein is entitled to any fees at all.

### II. FACTS

Guard Force Management, Inc. filed a Chapter 11 petition on July 23, 1993 (the "first Chapter 11 case"). Kerstein signed the petition as attorney for the Debtor, giving his address as Kerstein & Lynch, P.C., 1212 Hancock St., Quincy, Massachusetts. Although Kerstein did not prepare and file on the Debtor's behalf an application for authority to employ counsel, Kerstein served

as the Debtor's attorney until the Chapter 11 case was dismissed on October 25, 1994.

On July 28, 1994, approximately one year after the commencement of the first Chapter 11 case, the Debtor filed an "Application By Debtor To Employ Neil M. Kerstein as Counsel." The application, which was signed by the Debtor's president, referred to the need to hire Kerstein "to counsel and defend the Debtor in the matters of *Kenneth McConnell v. Guard Force Management, Inc.* and *Sharon Quinonez v. Guard Force Management, Inc.*" That same day, Kerstein filed an "Affidavit In Support Of Application For Employment" in which he stated that he was "disinterested." [1] On August 10, 1994, pursuant to Fed.R.Bankr.P. 2016(b), Kerstein filed a Disclosure of Compensation By Attorney For Debtor indicating that he had received $5,000.00 and was owed $325.00.[2] On August 15, 1994, at the conclusion of a hearing, United States Bankruptcy Judge William C. Hillman denied the application.

Approximately two months after issuing this ruling, Judge Hillman granted a motion filed by the United States Trustee and dismissed the Debtor's first Chapter 11 case. Two days after the dismissal of its 1993 case, Guard Force Management, Inc. filed a second Chapter 11 petition on October 27, 1994 (the "second Chapter 11 case"), rather than appealing the order of dismissal or moving for its reconsideration. Thus, Judge Hillman never approved Kerstein's employment as counsel to the Debtor for any purpose in the first Chapter 11 case, which was closed on December 8, 1994.

Beginning in February 1994, while the Debtor's first Chapter 11 case was pending, Kerstein, without court approval, counseled the Debtor with respect to litigation and related insurance coverage issues resulting from an employee's alleged criminal conduct while on duty as a security guard. The suit contained allegations that the Debtor was "negligent in its hiring, training, and supervision of the security guard." Amended Nar-

rative in Support of Application of Counsel for Fees at 11. Kerstein filed a "Suggestion of Bankruptcy" in the state court litigation when the Debtor informed him that its insurance policy would not cover any settlements or recoveries in suits involving criminal conduct of its employees. Kerstein also filed an answer to the state court complaint on behalf of the Debtor and has continued to monitor the case.

On October 27, 1994, in conjunction with its second Chapter 11 case, Kerstein filed a Rule 2016(b) Statement and an "Application by Debtor to Employ Neil M. Kerstein" (the "Application"), coupled with his affidavit. In the Statement, Kerstein disclosed that the compensation "paid or agreed to be paid" by the Debtor "for legal services rendered or to be rendered in contemplation of and in connection with the case" was undetermined and that prior to the filing of the Statement the Debtor had paid Kerstein $800.00. In its Application, the Debtor, through its president, stated the following:

Now comes the Debtor ... and respectfully requests that this Honorable Court enter an Order authorizing it to employ ... Kerstein ... as attorney to counsel and represent the Debtor in regard to the legal matters pertaining to the day to day operation of Debtor's business and the within Chapter 11 matter.

In support of the this Application, the Debtor asserts the following grounds:

1. Counsel has previously advised the Debtor in the above matters since approximately February 1991....

Application at 1. In the affidavit accompanying the Application, Kerstein stated that he was "making this Affidavit pursuant to Bankruptcy Code Sec. 327, Rule 2014 of the Rules of Bankruptcy Procedure, which require that counsel represent, to the best of their knowledge, no interest adverse to the estate concerning matters upon which they are to be engaged." He also indicated that to the best of his knowledge, neither he nor his law firm

---

1. In this affidavit, Kerstein gives his address as Kerstein & Kerstein, 1212 Hancock St., Quincy, Massachusetts.

2. Neither the Debtor nor Kerstein requested that Kerstein's employment be authorized *nunc pro tunc. See In re Jarvis,* 53 F.3d 416 (1st Cir. 1995).

represented any interest adverse to the estate and that both he and his law firm were disinterested persons within the meaning of section 101(13)[sic] of the Bankruptcy Code.[3] This Court granted the Application on October 28, 1994.

On November 14, 1994, the Debtor filed its schedules and statement of financial affairs. Statement question 9, which required the Debtor to "[l]ist all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of the case." It further required the Debtor to "Give NAME AND ADDRESS OF PAYEE, DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR and AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY." In response to question 9, the Debtor answered, inadequately, as follows: "$10,545.00." The Debtor did not list Kerstein as a creditor in its schedule of liabilities.

Although the Court approved the Debtor's Application to employ Kerstein, this Court must now reconsider that order in light of the disclosures made in connection with the fee application now under advisement. Kerstein filed his fee application on May 31, 1995. The fee application contained a narrative in support of the fees requested in which Kerstein stated the following: 1) that he was appointed as counsel to the Debtor on November 30, 1994[sic]; 2) that "[b]y March of 1993, Guard Force had paid to the IRS $45,826.00 and borrowed $28,000.00, but it was not enough to prevent Guard Force from filing for protection under the U.S. Bankruptcy Code;" 3) that "[a]s a result of Debtor's inability to reach a reasonable agreement with the taxing authorities the Debtor was forced to file under Chapter 11 of the Bankruptcy Code;" 4) that he and employees of his firm were seeking compensation for over 30 hours of time spent on state court litigation. Kerstein neither specifically mentioned the Debtor's 1993 bankruptcy case nor the receipt of any fees for services performed during the first Chapter 11 case.

The time entries that followed the narrative in Kerstein's fee application were grouped into three categories: 1) Kenneth McConnell v. Guard Force Management, Inc.; 2) Quincy Housing Authority v. Guard Force Management, Inc.; and 3) Chapter 11 bankruptcy petition. Kerstein sought $4,160.79 in fees and expenses for the McConnell matter, $3,897.49 for the Quincy Housing Authority matter, and $37,041.24 for the Debtor's second Chapter 11 case. Kerstein sought compensation for work performed throughout 1994 during the pendency of the first Chapter 11 case with respect to the first two matters.

At the June 8, 1995 hearing on Kerstein's fee application, the Court ordered Kerstein to supplement the application. Kerstein complied with the order and filed an Amended Application for Payment of Counsel Fees, an Amended Narrative in Support of Application for Counsel for Fees, as well as a listing of time entries broken down into the same categories as in the first fee application. In the amended narrative, Kerstein stated the following:

> There have not been any previous orders on interim compensation or reimbursement of expenses allowed in this matter. There

---

**3.** Section 101(14) provides in relevant part the following:

"disinterested person" means person that—
(A) is not a creditor, an equity security holder or an insider;
(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason....

11 U.S.C. § 101(14).

have been no previous payments or retainers made by the Debtor. There are no amount [sic] of approved fees and expenses remaining unpaid....

The time period of the services and expenses covered by this application is January 13, 1994 to June 30, 1995.

In the amended narrative, Kerstein alluded to the July, 1993 bankruptcy petition and Judge Hillman's comments with respect to his engagement to represent the Debtor in the state court matters. In the amended application, Kerstein sought $4,257.14 for the McConnell matter, $3,897.50 for the Quincy Housing Authority matter, and $38,181.16 for the second Chapter 11 case.

On June 29, 1995, almost three weeks after the hearing on the original fee application, Kerstein filed a Supplement to Amended Narrative in Support of Application for Counsel Fees. In this supplement, Kerstein disclosed *for the first time* the following:

In regard to Debtor's first ch. 11 petition, Debtor's counsel incurred and was paid $12,616.02 in fees and expenses. Said amount did not include, however, any payments for legal services rendered in regard to the Debtor's aforesaid employee matters.

Kerstein attached the billing records for the first Chapter 11. They show total fees and expenses of $12,380.03, not $12,616.02, and include time entries for work done with respect to the McConnell litigation.[4] The supplement contains no explanation as to when the $12,616.02 payment was made and no explanation of when the $5,000.00 payment that was disclosed on August 10, 1994 in the first Chapter 11 case was actually made or whether it was in addition to or in part of the $12,616.02.

As a result of the filing of the Supplement to the Amended Narrative, the Court must determine whether Kerstein's 1) untimely disclosures with respect to fees received for his representation of the Debtor in its 1993 case; 2) his likely status as a creditor in the present Chapter 11 case with respect to the first Chapter 11 case and the state court matters; and 3) his status as the likely recipient of unauthorized fees and expenses with respect to the first Chapter 11 petition warrant the denial of all fees in the present Chapter 11 case and the disgorgement of fees and expenses received in the Debtor's prior Chapter 11 case. Resolution of this issue turns, in part, on whether Kerstein's services beginning in 1993 were in contemplation of the filing on October 27, 1994.

## III. DISCUSSION

### A. *Legal Principles*

Section 327(a) of the Bankruptcy Code provides that either a Trustee or debtor in possession, with the Court's approval, may employ attorneys that "do not hold or represent an interest adverse to the estate, and that are disinterested persons...." 11 U.S.C. § 327(a). Federal Rule of Bankruptcy Procedure 2014 implements the provisions of section 327(a) with respect to applications to employ attorneys and other professionals. It provides in relevant part the following:

... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and ac-

4. For example, in the time entries for the first Chapter 11 case attached to the supplement, Kerstein indicates that he was paid $927.50 for the following:

review McConnell complaint; research defenses; draft suggestion of bankruptcy; answer, motion to hire attorney, affidavit and proposed order 07/20/94 ($560.00)

review file; draft Application of Debtor to Employ Counsel; Counsel's Affidavit, Order and certificate of service; letter to court/copy to creditors 07/26/94 ($315.00)

telephone conference with Atty Kelly re: McConnell is only Plaintiff and Insurer called to disclaim coverage 07/26/93 ($52.50)

In his present application, Kerstein seeks $612.50 for the following:

Draft suggestion of bankruptcy; review complaint; analysis of applicability of facts to law; draft answer; letter to court/copy to opposing counsel and client (N/C) re: file Suggestion and answer 07/26/94 ($612.50)

Kerstein appears to be double billing for this work.

countants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed.R.Bankr.P. 2014.

Section 329 of the Bankruptcy Code and Fed.R.Bankr.P. 2016(b) address debtors' transactions with attorneys. Rule 2016(b) provides, in relevant part, the following:

Every attorney for a debtor, whether or not the attorney applies for compensation shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Fed.R.Bankr.P. 2016(b).

Thus, to be eligible for employment in a bankruptcy case, an attorney must fulfill two statutory requirements: he cannot hold or represent an interest adverse to the estate, and he must be a disinterested person. 11 U.S.C. § 327(a). These two requirements "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 57 (1st Cir.1994); *In re The Leslie Fay Cos., Inc.*, 175 B.R. 525, 531 (Bankr.S.D.N.Y.1994). *See also Gray v. English*, 30 F.3d 1319, 1322–23 (10th Cir.1994).

The Bankruptcy Code does not define "interest adverse." Courts interpret the term to mean

'the possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which ... of them the disputed right or title to the interest in question attaches under valid and applicable law; or ... [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.'

*Rome,* 19 F.3d at 58 (quoting *In re Roberts,* 46 B.R. 815, 826–27 (Bankr.1985)); *see also In re EWC, Inc.,* 138 B.R. 276, 281 (Bankr. W.D.Okla.1992); *Matter of Carter,* 116 B.R. 123, 125 (Bankr.E.D.Wis.1990).

Unlike the phrase "interest adverse," the Bankruptcy Code does define the term "disinterested" in unambiguous language. Pursuant to section 101(14), a disinterested person is a "person who is not a creditor." 11 U.S.C. § 101(14)(A); *see Rome,* 19 F.3d at 58; *In re Martin,* 817 F.2d 175, 179 (1st Cir.1987); *In re CIC Inv. Corp.,* 175 B.R. 52, 55 (9th Cir. BAP 1994). Section 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

The court in *In re Flying E. Ranch Co.,* 81 B.R. 633 (Bankr.D.Colo.1988), stated that "[t]he Court has a duty to see to it that only persons meeting the standards of Section 327 of the Code are appointed as counsel for the fiduciary in the estate. It is counsel's obligation to come forward with the information concerning his interests." 81 B.R. at 637. Likewise, the Court in *In re EWC, Inc.,* stated the following:

These disclosure requirements are not discretionary. The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest as well as fee arrangements. They cannot pick and choose which connections are irrelevant or trivial.

The bankruptcy court has neither the obligation nor the resources to investigate the truthfulness of information supplied, or to seek out conflicts of interest not disclosed....

138 B.R. at 280 (citations omitted).

The Court in *EWC* also noted the consequences for violating disclosure duties and

the disinterestedness requirement. It emphasized that "[v]iolation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were *de minimis.*" *Id.* (citations omitted). With respect to the independent requirement of disinterestedness, the court noted three consequences to professionals with conflicts of interest: 1) the setting aside of their employment pursuant to section 327(a); 2) the denial of compensation for services performed during the period of the conflict pursuant to section 330(a); and 3) denial of all or part of the compensation requested pursuant to section 328(c).[5] *Id.* at 281–82.

Similarly, in *Martin,* the court determined that if a court discovers that there is, indeed, a conflict of interest, then possible remedies include "disqualification, disallowance of all or some fees, and invalidation of the security interest." 817 F.2d at 183. *See also Rome,* 19 F.3d at 57; *Gray,* 30 F.3d at 1322. The Supreme Court has also ruled on this issue in *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 269, 61 S.Ct. 493, 497–98, 85 L.Ed. 820, *reh'g denied,* 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941), stating that "[t]he only way to assure that professionals maintain the requisite standards of fiduciary conduct is to strictly enforce compliance with the conflict of interest rules by denial of compensation."

As noted by the court in *In re CIC Inv. Corp.,* 175 B.R. at 55, a minority of courts hold that "a professional with a pre-petition claim against the debtor may represent that debtor in the bankruptcy case." These courts rely on 11 U.S.C. § 1107(b), which states that "[n]otwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of

the debtor before the commencement of the case." 11 U.S.C. § 1107(b). *See In re Best Western Heritage Inn Partnership,* 79 B.R. 736, 740 (Bankr.E.D.Tenn.1987).

The majority of courts, however, follow a strict view, holding that an attorney with a pre-petition claim against the debtor is "absolutely barred from representing the trustee or the debtor in possession." *In re CIC Inv. Corp.,* 175 B.R. at 55; *see also In re Pierce,* 809 F.2d 1356, 1362 (8th Cir.1987); *In re Watervliet Paper Co., Inc.,* 96 B.R. 768, 771–72 (Bankr.W.D.Mich.1989), *aff'd,* 111 B.R. 131 (W.D.Mich.1989). The court in *In re Roberts* refined this standard by explaining that "[an attorney] does not hold an interest adverse to the estate nor does [he] lack disinterestedness" if he is owed fees for pre-petition services "rendered in contemplation of or in connection with the bankruptcy case," explaining that "[i]t would be a disservice to the principles of bankruptcy policy to chill exploration of alternatives to bankruptcy by the debtor's counsel by denying its request for fees under these circumstances." 46 B.R. at 849. If, however, the attorney is a pre-petition creditor as a result of legal fees for services "not rendered in contemplation of or in connection with the bankruptcy case, then the [attorney] would not meet the statutory requirements" of section 327(a). *Id.*

In *Rome,* the Court of Appeals for the First Circuit, noting that in the absence of "spontaneous, timely and complete disclosure required by section 327(a) and Fed. R.Bankr.P. 2014(a), court-appointed counsel proceed at their own risk," 19 F.3d at 59, determined that failure to make full and spontaneous disclosure under section 327(a) was sufficient ground for the denial of all compensation. *Id.* at 59. It added the following with respect to sanctions warranted for conflicts of interest and failures to disclose:

**5.** Section 328(c) of the Bankruptcy Code provides the following:

[T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employ-

ment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).

... where there has been a clear failure to make timely and spontaneous disclosure of all facts material to a disqualifying conflict of interest, counsel appointed pursuant to section 327(a) can lay no claim of right to a lesser sanction than the bankruptcy court is authorized to impose pursuant to section 328(a).

Like other courts which have considered the issue, however, we adopt no per se or brightline rule invariably requiring denial of all compensation under section 328(c)....

*Id.* at 62–63. Thus, the court cited *In re Kendavis Indus., Int'l, Inc.,* 91 B.R. 742, 762 (Bankr.N.D.Tex.1988), in which the bankruptcy court determined that the general rule favors total denial of compensation but equities may allow lesser sanctions. *See also In re The Leslie Fay Cos., Inc.,* 175 B.R. at 532.

■ In a case decided after *Rome, In re Federated Dept. Stores, Inc.,* 44 F.3d 1310 (6th Cir.1995), the Court of Appeals for the Sixth Circuit determined that section 328(c) is not controlling where the retention of the professional under section 327(a) was invalid. The court stated that "a valid appointment under § 327(a) is a condition precedent to the decision to grant or deny compensation under § 330(a) or 328(c)." *Id.* at 1320. While this Court cannot assume that the Court of Appeals for the First Circuit would adopt this approach, this Court has the discretion under the Bankruptcy Code and the decisional law in this circuit to sanction Kerstein by disallowing any or all fees or ordering disgorgement of fees.

#### B. *Analysis*

■ The United States Court of Appeals for the First Circuit emphasized the necessity of full and complete disclosure in *Martin,* 817 F.2d at 182, and *Rome,* 19 F.3d at 59. This Court's review of the entire record in this case indicates that Kerstein has failed to make required disclosures. Like the attorney in *In re EWC, Inc.,* 138 B.R. at 278, Kerstein "conspicuously denied the existence

of any conflict of interest in his representation" of Guard Force Management, Inc. in both his affidavit filed on October 27, 1994 and his amended narrative. He did not disclose that he had received either a payment of $10,545.00 or payments in excess of $12,-000.00 for the first Chapter 11 case and that he had not received payment for his services rendered in connection with the state court matters. Supplement To Amended Narrative In Support Of Application Of Counsel For Fees at 4. In short, this Court finds that Kerstein in the second Chapter 11 case was required to have included in his affidavit information about 1) the payment of $5,000.00 as set forth in the Rule 2016(b) Statement filed on August 10, 1994 in the first Chapter 11 case; 2) the existence and timing of any and all payments for services rendered in the first Chapter 11 case; 3) the Debtor's outstanding obligation to pay Kerstein for the state court litigation at the time of the filing of the second Chapter 11 petition; 4) Judge Hillman's decision to deny the Debtor's application to employ Kerstein in the first Chapter 11 case; and 5) the Debtor's failure to obtain authority to employ Kerstein in the first Chapter 11 case.

With respect to the timing of the payment or payments in the approximate amount of $12,000 by the Debtor, the Court notes the existence of three possibilities: 1) that the payment was made during the pendency of the first Chapter 11 case and was an unauthorized post-petition transfer, as Kerstein's employment was never authorized, *see* 11 U.S.C. § 549(a); 2) that the payment was made between the dismissal of the first Chapter 11 case and the filing of the second Chapter 11 case and, therefore, was potentially preferential, *see id.* § 547(b); or 3) that the payment was made during the pendency of the present case and was an unauthorized post-petition transfer as well.[6] Additionally, the timing of the $5,000.00 payment disclosed in the first Chapter 11 case is problematic because the Rule 2016(b) Statement merely indicates that sum was paid prior to the filing of the Statement. Accordingly, the payment

---

**6.** The same possibilities would exist with respect to the "$10,545.00" set forth in response to ques-

tion 9 on the statement of financial affairs.

may not have been made or intended as a retainer prior to the commencement of the first Chapter 11 case on July 13, 1995.

■ Additionally, Kerstein was a creditor of the Debtor at the time of the commencement of the second Chapter 11 case because, as he states in his fee application, he was owed money for services rendered with respect to the state court matters that commenced during the pendency of the Debtor's first Chapter 11 case. Accordingly, Kerstein was not "disinterested" at the time the Debtor filed its motion for authority to employ him as counsel and at the time Kerstein filed his affidavit, and the Court would not have authorized his employment. *See In re Hub Business Forms, Inc.*, 146 B.R. 315 (Bankr. D.Mass.1992).

In *Martin*, the Court of Appeals for the First Circuit considered whether a mortgage recorded by a law firm to secure payment of its fees on the day the firm assisted the debtors in filing a Chapter 11 petition was a materially adverse interest within the meaning of section 327(a). In remanding the case for further review, the court stated that the grant of the mortgage to the law firm was not "impermissible per se." 817 F.2d at 183. In explaining its rationale, the court stated:

> It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien). Sincerity or protestations of good faith, no matter how genuine, will not be enough. The test must be more an objective one. . . .
>
> This inquiry is of necessity case-specific. *There must be at a minimum full and timely disclosure of the details of any given arrangement.* Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the security interest coveted by counsel can be tolerated under the particular circumstances.

817 F.2d at 182 (emphasis supplied).

■ The instant case is distinguishable from *Martin* for several reasons. In the first place, in *Martin*, there was disclosure of the debtor/creditor relationship that was undertaken contemporaneously with the filing of the bankruptcy petition. Secondly, the mortgage that was granted to counsel by the Martins was to secure payment for services rendered in contemplation of or in connection with the debtors' bankruptcy case. This Court is unable to find that Kerstein's services with respect to the state court matters involving criminal actions by the Debtor's security guards were in contemplation of the bankruptcy case, especially since some of the services for which Kerstein seeks compensation preceded the second Chapter 11 filing by as much as ten months, and, in any event, were rendered during the pendency of the first Chapter 11 case. As Kerstein filed a pleading specifically seeking compensation for these services in the first Chapter 11 case, it would be preposterous for Kerstein to argue that somehow they were in contemplation of the second Chapter 11 case.

■ The Court finds that Kerstein's conduct in this case with respect to his duties under the Bankruptcy Code and Rules can be characterized in one of two ways: gross negligence at best or fraud upon the Court at worst. *See In re Tri-Cran, Inc.*, 98 B.R. 609 (Bankr.D.Mass.1989). Kerstein repeatedly filed statements indicating that he had received no payments from the Debtor, and he failed to disclose his status as a creditor for services performed within one year of the filing of the second Chapter 11 case. At present, he still has not provided the Court with meaningful details as to exactly how much he has been paid by the Debtor and precisely when he received payments. Accordingly, the Court could infer that the non-disclosures were deliberate and designed to maximize the fees received and safeguard the fees billed in the second Chapter 11 case from close scrutiny.

## IV. CONCLUSION

■ The Court finds that Kerstein egregiously failed to disclose information pertinent to this Court's decision to authorize his employment as counsel to the Debtor. Moreover, the Court finds that Kerstein was not a "disinterested person" within the meaning of 11 U.S.C. § 327(a) at the time of the

commencement of this case. Accordingly, his authorization to be employed as counsel in the second Chapter 11 case is revoked. However, even assuming the absence of a disabling conflict because of Kerstein's status as a creditor and concomitant lack of disinterestedness, Kerstein's failure to make required disclosures warrants the denial of all compensation requested and the disgorgement of all sums received from the debtor after the filing of the first Chapter 11 case.